239 So.2d 40 (1970)
Lee A. HOLMAN, Appellant,
v.
FORD MOTOR COMPANY, a Corporation, Appellee.
No. L-149.
District Court of Appeal of Florida, First District.
September 3, 1970.
*41 David R. Lewis, of Blalock, Holbrook, Lewis, Paul & Bennett, Jacksonville, for appellant.
Borden R. Hallowes, of Howell, Kirby, Montgomery & D'Aiuto, Jacksonville, for appellee.
SPECTOR, Judge.
Appellant sued for damages sustained when he rammed his 1966 Thunderbird automobile into a parked vehicle to avoid hitting pedestrian traffic after his brakes failed in downtown Jacksonville, Florida.
The action was brought against appellee and Duval Motor Company, a corporation and authorized Ford dealer. Duval continued as a defendant along with Ford until the evidence was all in and just before the case was tendered to the jury, at which time appellant took a voluntary nonsuit against Duval. The jury found appelless not guilty and this appeal followed.
Appellant's complaint against each defendant was in two counts. It charged each with liability based on negligence and breach of implied warranty. Although Duval was nonsuited, both counts remained against Ford when the case went to the jury.
Mr. Holman was president of the corporation which owned the Thunderbird in question and customarily was the sole driver of it. After the car was about a year old, he noticed that the brakes were not working well and took it to Duval, where it was purchased and had been serviced continually, to have the brakes repaired. A new power brakes booster system or unit was deemed necessary and was ordered from Ford in Detroit and ultimately installed by Duval. The booster unit is a sealed, self-contained device which is installed on the master brake cylinder on the forward side of the firewall and is linked to the brake foot pedal on one side and linked by a pistonlike rod to the master brake cylinder on the other. The booster unit provides a power assist in the operation of the car's hydraulic brake system through a vacuum system created by various moving diaphragms, valves and other parts within the booster unit itself, the initial vacuum being supplied by a hookup between the booster and engine. There was evidence introduced by Duval that the booster unit was a complete unit in itself and that its mechanics and other personnel were not allowed by Ford to tamper with or in any way repair the inner parts of such booster unit. If a booster became inoperative, it was to be replaced with a new unit. This, in fact, was the manner by which appellant's car brakes were attempted to be repaired in the instant case.
After the replacement booster unit was installed by Duval, the car was tested by *42 two of its employees and it appearing to them that the brakes were suitably fixed, appellant was called to get the car. The brake failure occurred within a few blocks and minutes after appellant took possession of the car.
It developed during the trial that both defendants recognized that appellant had suffered an injury for which at least one of said defendants was legally liable on one or more of the theories sued upon. Of course, it was Ford's theory and contention that the brake failure resulted solely from faulty installation of the booster unit by Duval's mechanics, while Duval contended that it had properly installed the booster unit and the brake failure was a direct result of a defective part in the booster unit furnished by Ford for installation in appellant's car. After the close of all evidence, appellant moved for a directed verdict on both counts against both defendants on the question of liability only and, further, that only the question of damages be tendered for consideration by the jury. Duval resisted plaintiff's said motion, arguing it was not liable on the implied warranty count by reason of this court's ruling in Smith v. Platt Motors, Inc., 137 So.2d 239, and, further, that its liability on the negligence count was a jury question in view of its evidence that the booster was correctly installed as well as evidence that there was nothing wrong with the linkage between the brake pedal and the booster and master cylinder after the brake failure had occurred. Inasmuch as we earlier entered our order dismissing Duval as an appellee, it is unnecessary to rule on the correctness of any of Duval's contentions or of any rulings involving appellant's claim against Duval.
Appellee Ford resisted plaintiff's motion for directed verdict by arguing that the question presented by the evidence was whether Ford had breached an implied warranty of fitness as to the booster or whether Duval had negligently installed the booster. Ford conceded in the record before the trial court that plaintiff was entitled to a judgment from one or the other of the two defendants and that the jury should be instructed to find one or the other of the defendants liable for the plaintiff's injuries, but not both. There then ensued a colloquy between all counsel and the court during which Ford urged that in no event could it be held liable under an implied warranty theory since the evidence showed without contradiction that the defective booster unit was manufactured by a supplier corporation rather than Ford. This contention is without merit for it ignores the holding in King v. Douglas Aircraft Co., 159 So.2d 108 (Fla.App. 1964), which recognizes that the rule in Justice Cardozo's opinion in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), has been extended in this and other jurisdictions to hold that an assembler of a product who sells the completed product as its own and thereby represents to the public that it is the manufacturer is considered the manufacturer of the component part. We think the foregoing principle is clearly applicable to the case at bar. It would seem unconscionable to us if Ford were permitted to shirk its duty to stand behind the products that it sells to the public through its dealer organization on the very shallow excuse that the defective component was manufactured by a supplier selected by it rather than by Ford itself.
Upon completion of arguments on plaintiff's motion for directed verdict, the court announced that it was directing a verdict for the plaintiff against both Ford and Duval as to the count on implied warranty and, further, that the court was letting plaintiff's claim against both Ford and Duval under the negligence count go to the jury. Thereupon plaintiff announced that he was abandoning his negligence claim so that the only thing left for the jury would be the question of damages under the directed verdict of liability under the implied warranty count. At this point in the case plaintiff apparently deemed himself victorious as to all the legal issues, and there remained only the task of presenting *43 argument on the evidence of damages so as to result in the highest possible jury verdict. To accomplish this, plaintiff settled on trial strategy that called for eliminating Duval from the jury's consideration on the question of damages and a voluntary nonsuit was announced as to that defendant, leaving only Ford as the sole party against which the jury would be instructed to find damages. Such practice is permissible in this jurisdiction. See Salcedo v. Southeastern Natural Gas Co., 171 So.2d 398 (Fla.App. 1965); Adler v. Segal, 108 So.2d 773 (Fla.App. 1959); and Hutchins v. City of Hialeah, 196 So.2d 741 (Fla. 1967).
After plaintiff nonsuited the defendant Duval, the trial court changed its order granting a directed verdict against both defendants. For some reason not made clear in either the colloquy between the trial court and the attorneys for all parties or in the appellate briefs, the trial court concluded that a directed verdict on the implied warranty count which had earlier been announced against both defendants could not stand against only one of the defendants. At this point plaintiff withdrew his announcement abandoning the negligence count of the complaint and withdrew his motion for a voluntary dismissal or nonsuit against Duval. After plaintiff's renewed motion for a directed verdict against both defendants was denied, he again voluntarily dismissed as to Duval and the case was submitted to the jury against Ford alone on both the counts of negligence and implied warranty.
Appellant's first two questions raised on appeal are related and argued together. First, it is contended that the trial court erred in withdrawing its directed verdict for the plaintiff against each of the defendants after announcing the granting of same at the close of the evidence. This point is without merit. It seems well settled that interlocutory judgments or orders made during the progress of a case are always under the control of the court until final disposition of the suit, and they may be modified or rescinded upon sufficient grounds at any time before final judgment. Alabama Hotel Co. v. J.L. Mott Iron Works, 86 Fla. 608, 98 So. 825; Mitchell v. Mason et al., 90 Fla. 201, 106 So. 430. The trial court's determination that his announced intention to grant directed verdicts against both defendants was erroneous and should be vacated, whether correct or not, was nonetheless within the court's power under the principles announced in the Alabama Hotel and Mitchell cases, supra.
The second point raised contends that it was error to deny plaintiff's motion for directed verdict against both defendants. We consider this and the remaining assignments of error only as they relate to Ford since, as noted earlier, Duval has been dismissed as an appellee. The rule is well settled in this jurisdiction that a verdict may be directed against a defendant only when the evidence and all of the inferences which may reasonably be deduced therefrom would not support a verdict for the defendant. In such circumstances, the jury may be directed to bring a verdict for the plaintiff. The rule has been stated variously in many cases, including Budgen v. Brady, 103 So.2d 672 (Fla.App. 1958), and Sheehan v. Allred, 146 So.2d 760 (Fla.App. 1962), cited by appellee Ford. Application of the rule to the evidence adduced in this case precludes a holding that appellant was entitled to a verdict against Ford as a matter of law on either of the two counts sued upon. There was no undisputed direct and conclusive evidence that the power booster unit was the proximate cause of the accident. There was uncontroverted evidence that the tailstock within the sealed booster unit was broken but that evidence was accompanied by testimony from the expert witnesses put on by Ford that even if the tailstock was broken, the only effect would be the loss of the vacuum assist or power so that the straight or powerless brake system would still be operative.
*44 The next question raised by appellant is the trial court's refusal to instruct the jury on the doctrine of res ipsa loquitur. Appellant contends that he was entitled to a jury instruction on said doctrine under authority of the decisions in Yarbrough v. Ball U-Drive System, 48 So.2d 82 (Fla. 1950), and Stanek v. Houston, 165 So.2d 825 (Fla.App. 1964). We agree and reverse. In Stanek the court stated that the doctrine is but a rule of evidence which establishes a permissible inference which may, but need not, be drawn by the jury in its determination of whether the defendant was at fault for the damage complained of. The doctrine may be relied upon by the plaintiff when the following conditions are met: (1) the instrumentality involved was within the exclusive control of the defendant at the time of the injury, both as to operation and inspection; (2) the injury was not the result of any voluntary action or contribution on the part of the plaintiff; and (3) the accident would not have occurred had the defendant used due care. Appellee concedes that the first requirement set forth concerning exclusive control by the defendant is not vitiated by the fact that appellant was in sole possession and control of the automobile at the time the accident occurred. This concession is consistent with the more modern view of the possessory element of the res ipsa doctrine expressed by the court in the Yarbrough case, supra, 48 So.2d at page 84:
"* * * We are not troubled with the absence here of the element of exclusive control by the defendant of the thing causing the injury, for this case, in our opinion, falls within the exception to the rule like [citing exploding bottle cases]. * * * Appellee had control of the truck in question up to the very time it was entrusted to Yarbrough, and that satisfied this requirement of the rule."
Appellee contends that the doctrine of res ipsa loquitur is not applicable in the instant case because of the peculiar circumstances created when a voluntary nonsuit was taken against Duval. Ford argues that perhaps the doctrine might have been appropriate if Duval had remained in the case because of the evidence from which the jury could have inferred that the brakes failed because of negligent installation by Duval's mechanic. Ford's contention is unavailing for two reasons. First, res ipsa loquitur is not confined to a fact situation where there is only one possible defendant whose negligence could have caused the injury. We have found no Florida cases addressed to the issue and counsel for the parties herein have not called our attention to any. However, in a well written decision, the Fifth Circuit Court of Appeals in Dement v. Olin-Mathieson Chemical Corporation, 282 F.2d 76 (5th Cir.1960), considered the applicability of an instruction on res ipsa to a case by a party injured in an explosion against three separate manufacturers of component parts of an explosive charge. The court stated at page 82:
"For res ipsa to apply, it is not necessary that as a matter of law the jury could reach no other conclusion except that the casualty was caused by a particular identified force. It is  as it always was  a question of fact. * * *
* * * * * *
"Nor it is necessary here that in order for res ipsa to apply one particular force must be severed out, identified and held as a matter of law to be the cause of the premature explosion. * * *"
The court concluded in Dement that the plaintiff there was deprived of an essential substantive theory of recovery by the trial court's refusal to instruct the jury on res ipsa. Application of the same reasoning to the case at bar requires us to hold that appellant was likewise deprived of a theory of recovery against Ford by the trial court's failure to instruct the jury here on res ipsa as requested by appellant. Without the requested instruction appellant was deprived of a basic facet of the rule of circumstantial evidence in proving negligence on the part of appellee.
*45 There is yet another reason why appellee's argument that res ipsa is inapplicable must fall. Ford argues that the inference of its negligence is dispelled by evidence of negligent installation of the booster by Duval's mechanics. Our survey of the transcript of testimony fails to reveal any evidence of negligent installation by Duval. To be sure, some of Ford's expert witnesses testified that the broken part within the power booster unit could not affect the car's braking ability and that the only consequence of the broken part was a loss of vacuum assist in braking but that there yet remained the same braking ability of ordinary hydraulic brakes. Those experts concluded and testified that since the broken tailstock could not cause the brake failure, the only other cause they knew of would be negligent installation by Duval's mechanic. But there was no evidence, direct or indirect, that the booster unit was in fact installed in any unusual or improper method. Ford's own service representative testified that upon his inspection of the braking system shortly after the failure, he found all of the external connections to be in proper place except for the foot pedal being locked in place almost to the floorboard. Another of Ford's witnesses, Mr. Stone, testified that this type of booster has a high amount of internal resistance and without engine vacuum the brake pedal would very likely stay in the depressed position. Stone further deposed that the loss of vacuum resulting from a broken tailstock could cause the brake pedal to go to the floor and stick. Stone also testified that while there is a shortcut method for installing the booster, there was no evidence of such shortcut method being used. Moreover, he stated that even if the shortcut installation of the booster had occurred, there would be no relationship between that and the brake foot pedal sticking on the floor.
The circumstances recited above are more than sufficient to serve as the basis for an inference by the jury that Ford's defective tailstock caused the booster unit to malfunction, resulting in a loss of the use of even the ordinary brakes when the foot pedal stuck, if only the trial court had so instructed the jury by the giving of the res ipsa charge. Failure to so charge enabled the jury to be oblivious of the fact that it was not necessary for the plaintiff to present direct testimony on proximate cause between the brake failure and the broken tailstock. In Dunn v. Vogel Chevrolet Co. and General Motors Corporation, 168 Cal. App.2d 117, 335 P.2d 492, 495, the court considering a brake failure case, reversed the trial court's refusal to instruct on the doctrine of res ipsa loquitur and stated:
"Thus where, as here, `the evidence is conflicting or subject to different inferences, it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur are present.' Baker v. B.F. Goodrich Co., 115 Cal. App.2d 221, 229, 252 P.2d 24, 29. * * *
"`* * * The conclusion that negligence is the most likely explanation of the accident, or injury, is not for the trial court to draw, or to refuse to draw so long as plaintiff has produced sufficient evidence to permit the jury to draw the inference of negligence even though the court itself would not draw that inference; the court must still leave the question to the jury where reasonable men may differ as to the balance of probabilities (Res Ipsa Loquitur in California, Prosser, 37 Cal.L.Rev. 183, 194-195). The inference of negligence is not required to be an exclusive or compelling one. It is enough that the court cannot say that reasonable men could not draw it. Bauer v. Otis, 133 Cal. App.2d 439, [443], 284 P.2d 133. * * *'"
Our conclusion is that the plaintiff, appellant here, was deprived of an essential substantive theory of recovery by the failure to instruct the jury on res ipsa. Without said instruction appropriately fashioned to the conflicting evidentiary claims, the *46 plaintiff was deprived of a basic facet of the circumstantial evidence rule in attempting to prove negligence by the defendant.
Accordingly, the judgment herein appealed is
Reversed.
CARROLL, DONALD K., Acting C.J., and WIGGINTON, J., concur.