**BERNARD, et ux v. FLORIDA PLANNED COMMUNITIES, Inc.**

No. 75-5142-SP.

County Court, Palm Beach County.

January 30, 1976.

J. Michael Burman, Palm Beach, for the plaintiffs.

Daniel L. Bakst, West Palm Beach, for the defendant.

DANIEL T. K. HURLEY, County Court Judge.

*Final judgment:* This cause came on for trial before the court and, from the evidence and testimony adduced therein, the court makes the following —

### Findings of fact

1. In May, 1974, plaintiffs purchased a condominium apartment from defendant-builder. The building in which plaintiffs' apartment is located contains six apartments, three on the first floor and three on the second floor. Plaintiffs' was an end apartment on the first floor. At the time of the incident herein, the remaining apartments on the first floor were unoccupied and one apartment on the second floor was occupied.

2. The plumbing system in plaintiffs' building is such that each second floor apartment is connected with the apartment directly below. The lines from the three sets of apartments connect into a larger line outside the building which in turn connects with the main sewer line.

3. Golden Lakes Village, the development in which plaintiffs' building is located, contains approximately 1,000 units and was under construction during the time of the incident herein. Subcontractors on the job were given master-key access by the defendant to all of the units in the development. Despite the fact that defendant, directly or indirectly, provided portable toilets for workmen at the job site, defendant also allowed and approved the use of vacant apartments for the use and comfort of the workmen. As for plaintiffs' building, a custom developed among subcontractor-workmen and among some Golden Lakes Village employees whereby they utilized the center apartment on the first floor as a lunch area. They also utilized the bathroom facilities in the apartment. During the time of the incidents herein, it is reasonable to infer from the evidence and the court so finds, that the bathroom in the center apartment was not regularly supplied with toilet paper. On one occasion, plaintiffs saw workmen carrying in their own supply of toilet paper. Nathan Karesky, a resident on the second floor of plaintiffs' building, complained to Mr. Allan Gold, an agent of the defendant, of the workmen's use of the center apartment prior to the incidents herein. Additionally, plaintiffs complained of this practice and brought it to the attention of agents of the defendant. Nonetheless, the use of the unoccupied center apartment continued.

4. Upon purchasing the apartment, plaintiffs remained for two days. During this time the plumbing facilities were utilized and were found to be in working order. Shortly thereafter, Nathan Karesky, the second floor resident, observed water flowing from under the front doors of two apartments on the first floor. The plumbing lines had become clogged. The carpeting in all of the apartments on the first floor was soaked and human excrement was visible in various areas of the three apartments.

5. During the time of the incidents herein, brown paper towels were available to workmen and residents from a recreation building in the development. Expert testimony established that, if flushed down a toilet, these towels had a propensity to stick to the side of the pipe, causing it to clog and backup.

6. Plaintiffs returned on July 4, 1974, and observed the conditions set forth above. Since then the carpeting has been cleaned by plaintiffs, yet it continues to be malodorous to the extent that a normal and enjoyable use of the apartment is impossible.

7. To remedy the above situation, all of the carpeting and underpadding in the apartment must be replaced. A reasonable cost for carpeting and padding of comparable quality, plus installation, is $500.

8. With respect to the plumbing system in plaintiffs' building, it is the finding of the court that in plan and dimension it was adequate for normal usage. Furthermore, it was properly installed and inspected. Subsequent to installation, however, the system became clogged and incapable of functioning. This was caused by the introduction of unsuitable materials into the plumbing system by employees of defendant and subcontractor workmen using the center apartment bathroom.

9. Upon purchasing the condominium unit, plaintiffs received an express warranty to the effect that the plumbing system is ". . . covered under a one (1) year guarantee . . ."

From the foregoing findings of fact and based upon the testimonial and documentary evidence presented at trial, the court reaches the following —

### Conclusions of law

The court is of the opinion that there are three separate, distinct theories which substantiate plaintiffs' claim for recovery.

The first flows from defendant's breach of warranty — express and implied. At first glance it might appear that the court's finding

with respect to the system's plan and installation precludes a finding of breach of express warranty. It does not. Implicit in the guarantee are the promises that the system is of good quality, that it is properly installed *and that it works.* When, due to the actions of defendant-vendor's employees and agents, the system will not work, the express warranty is breached. Then too there is an implied warranty that the condominium unit was constructed in a good workmanlike manner *and is suitable for human habitation.* [*Gable v. Silver,* 258 So.2d 11 (4th Fla. App. 1972) and 264 So.2d 418 (Fla. 1972); *Humber v. Morton,* 426 S.W.2d 554 (Sup. Ct. Texas 1968)]. Even if the system is of premium quality and is faultlessly installed, there is still a breach of implied warranty if the system is incapable of operation thus rendering the home unfit for human habitation. If it can be said that the problem is the result of the work or actions of the vendor or his employees or agents, then the purchaser may recover for breach of warranty.

The second theory of recovery results from an application to the doctrine of res ipsa loquitur. *Holman v. Ford Motor Company,* 239 So.2d 40 (1st Fla. App. 1970) and *Cortez Roofing, Inc. v. Barolo,* 323 So.2d 45 (2d Fla. App. 1975). Having considered the scope of the problem — it affected all sold and unsold units on the first floor, and having reviewed expert testimony about the type of abuse necessary to cause such a condition, and further having taken into account plaintiffs' minimal use of a portion of the facilities, the court is of the opinion that there is sufficient "exclusive possession" by the defendant, together with the other criteria set forth in the case authority above, to allow the application of the doctrine of res ipsa loquitur and thereby establish defendant's negligence.

Thirdly, from the testimony and evidence presented, it is the opinion of the court and it so finds, that defendant's failure to exercise reasonable care and take appropriate measures to restrict the general and continuous usage of the unequipped bathroom facilities in the center apartment constituted negligence which proximately caused injury to plaintiffs.

Accordingly, it is ordered and adjudged that the plaintiffs, Leon Bernard and Bessie R. Bernard, do take and recover judgment from the defendant, Florida Planned Communities, Inc., in the amount of $500, together with their costs which may be determined in a subsequent proceeding, for which let execution issue.