336 So.2d 1221 (1976)
GOODYEAR TIRE AND RUBBER COMPANY and Travelers Insurance Company, Appellants,
v.
HUGHES SUPPLY, INC., and Hartford Accident and Indemnity Company, Appellees.
No. 75-336.
District Court of Appeal of Florida, Fourth District.
August 27, 1976.
Rehearing Denied September 30, 1976.
*1222 Janice Halker, of Gurney, Gurney & Handley, P.A., Orlando, for appellants.
Elmo R. Hoffman, of Hoffman, Hendry, Parker & Smith, Orlando, for appellees.
RUDNICK, VAUGHN J., Associate Judge.
Goodyear Tire and Rubber Company and its insurance carrier, defendants in a personal injury action, appeal from a final judgment pursuant to a jury verdict. We affirm.
The cause of action arises from the sale and installation by the Appellant, Goodyear Tire and Rubber Company to the Appellee, Hughes Supply, Inc. on June 5, 1972 of a "Goodyear Super High Miler" tire which was the appropriate tire for the truck upon which it was being installed and had been represented by the tire company's personnel that the tire could be expected to get 80,000 to 120,000 miles. The subject tire was installed by the Goodyear Tire and Rubber Company's employees on the left front wheel of the tractor-trailer rig and on July 8, 1972, after having been driven 9,500 miles, it blew out while being driven by the Appellee, Joseph Hale. Driver Hale had fifteen years experience as a tractor driver and had made inspection of the tires about ten miles prior to the accident. A tire specialist at the Hughes Supply, Inc. checked the tire with an air gauge when Mr. Hale began his journey on July 5, 1972 and Mr. Hale regularly checked the tires on the vehicle by a visual inspection; actually getting down and looking at the treads and looking at the walls and checking the tires with a tire billy approximately every 125 to 200 miles, together with the valve stems immediately prior to the blow out. The inspections revealed no signs of any under inflation, nor had he struck any objects. There were no signs of any cuts or nails in the subject tire.
After the accident a Hughes Supply, Inc. employee went to the scene of the accident and personally examined the tire in question, found no nail holes, no punctures of any kind and Appellees' expert witness testified on microscopic examination he could find no nail holes or punctures, nor was there any evidence the tire had been worn in such a manner evidencing it was being used in an under inflated condition. In his opinion the tire blew out because of a separation of the cords within the tire from the matrix in the immediate vicinity where the rupture occurred and the separation was the result of a defect in the manufacture of the tire in question.
The witnesses for the Appellants relating to the condition of the tire and the cause of its catastrophic deflation was quite to the contrary, in that Appellants' field engineer reported the edges of the tread of the tire were well rounded, the cord ends were hard from excessive heat; there was a nail hole in the third groove from the serial side and the tire was damaged to its present condition from operation at extreme low air pressure  the nail hole causing the under inflation.
The Appellants' expert testified the tire did not blow because of the defective cord, but rather the under inflated condition resulting from the nail hole and if an inherent *1223 defect existed in the tire, the failure would have occurred in no more than 100 miles.
The Appellants have raised three points on this appeal urging the lower court erred: (1) The giving of Appellees' requested jury instruction No. 14; said instruction being taken verbatim from the Florida Standard Jury Instruction 4.6 except for the substitution of the names of the parties involved in the law suit, (2) Allowing Appellees' expert to testify as an expert, and (3) Denying Appellants' motion for a directed verdict.
The Court finds no merit in the last assignment of error denying Appellants' motion for directed verdict.
The qualifications of the Appellees' expert witness included professional engineering degrees, both bachelor's and master's; a professorship of mechanical engineering and metallurgy for over 29 years; teaching courses in chemical engineering and in materials, selection of materials for manufacturing processes, and determination of whether materials were suitable for the use for which they were to be used; a consulting engineer for more than 1 year; membership in the American Society of Testing Materials; familiarity with the trade publication known as "Tire Rim Association Yearbook"; experience in the area of failure analysis for airplane crashes which included the study of tire failures; the study of over 1600 reports of tire tests designed to determine tire road ability, friction coefficient; experience in the determination of accident reconstruction due to tire failure; investigation of accidents involving tire failures; knowledge of how tires are made; visual observation of how nylon cord is manufactured and tested and generally taught about the materials that are included within a tire.
The trial court did not err in allowing the Appellees' expert to testify as such. See Davis v. State, 44 Fla. 32, 32 So. 822 (1902); Krohne v. Orlando Farming Corporation, 102 So.2d 399 (2nd D.C.A. 1958); Fred Howland, Inc. v. Morris, 143 Fla. 189, 196 So. 472 (1940).
The Supreme Court of Florida in the case of Orme v. Burr traces the history of the doctrine of res ipsa loquitur and adopted the following view:
"... res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff." 157 Fla. 378, 25 So.2d 870 (1946)
It has been held that the doctrine may be relied upon when the following conditions are met:
"(1) The instrumentality involved was within the exclusive control of the defendant at the time of the injury, both as to operation and inspection; (2) the injury was not the result of any voluntary action or contribution on the part of the plaintiff; and, (3) the accident would not have occurred had the defendant used due care." Holman v. Ford Motor Company, 239 So.2d 40 (1st D.C.A. 1970); see also Commercial Union Insurance Company v. Street, 327 So.2d 113 (2nd D.C.A. 1976).
In Florida the doctrine of res ipsa loquitur is but a rule of evidence which establishes a permissible inference which may, but need not, be drawn by the jury in its determination of whether the defendant was at fault for the damage complained of. Holman v. Ford Motor Company, supra; Yarbrough v. Ball U-Drive System, 48 So.2d 82 (Fla. 1950).
The Appellants herein take the position that as the tire in question had left the *1224 custody of the Appellants for a period of thirty days and had been driven for 9,500 miles, under such circumstance the doctrine of res ipsa loquitur is totally inapplicable.
The Appellees take the position that they submitted to the trial court and jury sufficient evidence to show due care was used in the handling and use of the tire in question after possession and control of it left the manufacturer and the law does not require an injured person eliminate each and every remote possibility of injury to the tire up to the time of its explosion.
We agree with the position of the Appellees. See Groves v. Florida Coca-Cola Bottling Company, 40 So.2d 128 (Fla. 1949); Yarbrough v. Ball U-Drive System, supra, and Holman v. Ford Motor Company, supra.
To summarize, in Florida, res ipsa loquitur is a rule of evidence and applies only in those factual situations wherein the evidence reflects the occasion would not have occurred in the absence of negligence and there is some evidence warranting a reasonable inference the defendant is responsible therefor and all other elements of the rule, considering its exceptions, are met.
Applying the rules of law set forth to the factual situation with which the trial court was confronted, we find no error in the court's giving the Florida Standard Jury Instruction on res ipsa loquitur.
AFFIRMED.
MAGER, C.J., concurs.
WALDEN, J., dissents, with opinion.
WALDEN, Judge (dissenting):
It was error to give the jury an instruction on res ipsa loquitur under the facts and circumstances of this case. I would reverse and remand for a new trial with instructions to eliminate res ipsa loquitur.
The truck tire had been in plaintiff's exclusive use and possession more than a month. It had been driven 9,520 miles. At the time of the blowout the truck was traveling at a speed of 55-60 m.p.h. with a gross weight of 71,400 pounds.
The tire was not within the exclusive control of defendant at the time of the blowout. It cannot be said that the blowout was not the result, in whole or part, of plaintiff's action. It cannot be said that the accident would not have occurred had defendant used due care.
Under the rationale employed by the majority res ipsa loquitur would be equally applicable had the tire been in plaintiff's possession for ten years after traveling 79,500 miles. Under the majority analysis, res ipsa loquitur would be available in every products liability case, regardless of possession and the other classical criteria, so long as plaintiff testified or produced evidence that plaintiff was not negligent in the use of the product.
Finally, the doctrine of res ipsa loquitur does not support an inference of negligence where it can be reasonably inferred that the injury was attributable to another, or where there is evidence showing that the defendant was not negligent. 23 Fla.Jur., Negligence, § 119.
I do, therefore, respectfully dissent.