443 So.2d 212 (1983)
William B. BARDY, Jr., and Sarah Bardy, His Wife, Appellants,
v.
SEARS, ROEBUCK AND COMPANY and Employers Insurance of Wausau, a Mutual Company, Appellees.
No. 82-2314.
District Court of Appeal of Florida, Second District.
December 14, 1983.
*213 Jan Paradise of Law Offices of Patrick Dekle, Tampa, for appellants.
E.N. Fay, Jr., of Mann & Fay, Bradenton, for appellees.
HOBSON, Acting Chief Judge.
William Bardy, Jr., and Sarah Bardy, his wife, plaintiffs below in an action against Sears, Roebuck & Company ("Sears") and its insurer, Employers Insurance of Wausau ("Wausau"), alleging, inter alia, that Mr. Bardy sustained permanent injury to his hearing from an explosion of a Sears car battery as a result of Sears' negligence, appeal a final judgment rendered in favor of Sears and Wausau following a jury trial wherein the court refused the Bardys' request to instruct the jury on the doctrine of res ipsa loquitur. We affirm.
Mr. Bardy related at trial that on the afternoon of November 18, 1975, he drove his 1973 Ford Mercury to a Sears automotive store because his new Sears battery was not functioning properly. After testing the new battery inside the service garage, a Sears employee advised Mr. Bardy that a loaner battery would have to be installed for temporary use until his new battery could be fixed. Mr. Bardy did not observe the loaner battery being installed and did not know who installed it. After the battery was installed, a Sears employee drove the car out of the garage and shut the engine off. Mr. Bardy was told to return in two days for his new battery.
Mr. Bardy then drove away in his car and, after shopping at a grocery store, arrived home. He parked the car in his driveway and locked it. The next morning he tried several times to start the car, but each time he tried the engine died out after idling for only a few seconds. Thinking that he had flooded the engine, he let the car sit in the driveway for the remainder of the day. That evening he again attempted to start the car, but got the same results. He then decided to check whether the battery was functioning properly by testing the lights, horn, and various other electrical components. All indications were that the battery was working right. However, when he pushed the off switch for the front lights, they would not shut off. He then walked around to the front of the car to disconnect the battery cables from the battery in order to shut the lights off. Upon pulling the hood latch located either underneath the front bumper or in the grill, the hook anchoring the hood down was released and the hood rose about five inches. According to Mr. Bardy,
[a]t this very second or fraction of seconds the whole God darn thing blew up.
The hood came up, and there was a terrible, big noise. Of course, I'm assuming  everyone would in my case  I sort of jumped back, and I was very lucky because the acid that came off went the other way, and the loud explosion was so loud that I, frankly, was dumbfounded for a few seconds.
Mr. Bardy later noticed that a large portion of the top of the battery had exploded away. He also observed two of the battery's caps on the roof of a garage-type enclosure 20 feet from the car. However, the car started the following morning with the damaged battery. He then drove the car back to the Sears automotive store and had the loaner battery replaced with the repaired, new battery.
Each side introduced an expert witness at trial to testify as to the probable cause of the explosion. Robert Whitker, a full professor of chemistry at the University of South Florida with a Bachelor of Science *214 degree in Chemistry and a Ph.D. in Inorganic Chemistry, testified for the Bardys. He conceded at the outset of his testimony that he did not have any special knowledge or personal experience with respect to the cause of car battery explosions. Nevertheless, based upon a hypothetical question formulated from the facts adduced from Mr. Bardy's testimony, he posited that the battery was not operating properly at the moment of the explosion. He was of the opinion that a very rapid chemical reaction between hydrogen and oxygen resulted in the explosion. Later, he tendered that friction can produce enough energy to ignite a mixture of hydrogen and oxygen inasmuch as friction causes heat. However, he stated that it would be "pure speculation" to say exactly what triggered the explosion.
Everett Wilson, an employee of the Globe Battery Division of Johnson Controls, Inc., thereafter testified for Sears and Wausau. He said that he is acknowledged as one of the top automotive electricians in the country. He pointed out that he has had personal experience with car battery explosions, both intentional and accidental. Based upon the same hypothetical question which had been posed to Dr. Whitker, he opined that the battery was not defective and that it had not been installed improperly. In his view, it was fully functional and operating normally at the time of the explosion. He arrived at this opinion because the battery started the car both before and after the explosion. He surmised that the explosion was caused by a hot ignition source. Though he admitted that it was "possible" that the ignition source was internal, he said that in such a case it is "usually" external. He explained that under cranking conditions hydrogen escapes from a car's battery and accumulates under the hood. With the introduction of an external ignition source into the immediate area of the battery, the hydrogen ignites, thereby propogating a flame into the battery's cells which results in the exploding away of the battery cover.
The Bardys' central contention on appeal is that the doctrine of res ipsa loquitur applies to the factual situation at bar because, in their view, there was no direct evidence of negligence on the part of Sears or Mr. Bardy, the explosion could not have happened in the absence of negligence, and the loaner battery was in the constructive, exclusive control of Sears at the time of the explosion. Sears and Wausau counter that the facts do not justify a res ipsa loquitur instruction.
In Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So.2d 1339 (Fla. 1978), a case which neither party cites, our state supreme court remarked that the doctrine of res ipsa loquitur had developed "a judicial gloss" in Florida courts which was never intended. Id. at 1341. It therefore deemed it appropriate "to address the dimensions of the doctrine head-on." Id. Declared the court:
Res Ipsa Loquitur  "the thing speaks for itself"  is a doctrine of extremely limited applicability. It provides an injured plaintiff with a common-sense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present. Essentially, the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control.
Id. at 1341-42. The court amplified that
[t]he threshold inquiry is whether that which occurred is a phenomenon which does not ordinarily happen except in the absence of due care. The initial burden is on the plaintiff to establish that the circumstances attendant to the injury are such that, in the light of past experience, negligence is the probable cause and the defendant is the probable actor. An injury standing alone, of course, ordinarily does not indicate negligence. The doctrine of res ipsa loquitur simply recognizes that in rare instances an injury may permit an inference of negligence if coupled *215 with a sufficient showing of its immediate, precipitating cause.
Id. at 1342. The court commented further:
We recognize that there are exceptions to the exclusive control requirement in Florida. Each is supported, however, by a justifiable basis for inferring that the cause of injury was probably the defendant's negligence.
Id. at 1342-43.
Last year, in City of New Smyrna Beach Utilities Commission v. McWhorter, 418 So.2d 261 (Fla. 1982), another case which neither party cites, the court, after reiterating the essential elements of the doctrine set forth in Goodyear, emphasized:
Given the restrictive nature of the doctrine, a court should never lightly provide this inference of negligence. Rather, it is incumbent upon the plaintiff to present his or her case in a manner which demonstrates and satisfies each of the doctrine's requisite elements and only after the plaintiff carries this burden of proof may a court supply the inference.
... .
At the risk of redundancy, we would add that res ipsa loquitur is applicable only if all of its requisite elements are present in a given case.
Id. at 262-63.
Applying the facts in the case at bar to the aforementioned statements of law by our high court in Goodyear and McWhorter, we are compelled to hold in favor of Sears and Wausau. We sympathize with the Bardys' plight. They are correct not only in their assertion that direct evidence of negligence on Sears' part was unavailable, but also in their claim that there was not any direct evidence of negligence on the part of Mr. Bardy. But, as the court noted in Goodyear, an injury by itself does not ordinarily indicate negligence on a defendant's part. 358 So.2d at 1342. We simply cannot ignore that the Bardys failed to carry their threshold burden of proving by a preponderance of the evidence that the explosion of the loaner car battery would probably not have occurred without negligence on the part of Sears.
In this case, both parties wisely resorted to the use of expert witnesses to testify regarding the cause of the car battery explosion. While in many cases a lay jury is competent to conclude from common experience that an event does not usually occur absent negligence on a particular defendant's part, in some cases such a basis of common knowledge is lacking. In such cases expert testimony may be necessary to provide a sufficient foundation. See Fricke, The Use of Expert Evidence in Res Ipsa Loquitur Cases, 5 Vill.L.Rev. 59 (1959); Note, 196 U.Pa.L.Rev. 731 (1958). Such was the case here. Sears and Wausau's expert witness, Mr. Wilson, who appeared from the testimony to be more qualified than the Bardy's expert witness, Dr. Whitker, opined that, based upon his experience with car battery explosions, an explosion of the type which occurred "usually" results from an external ignition source. In other words, he was of the view that the immediate, precipitating cause of Mr. Bardy's injury was probably not the fault of Sears. His testimony in this regard was uncontradicted. Dr. Whitker could only speculate as to the immediate, precipitating cause.
To be sure, Mr. Wilson conceded that it was "possible" that the immediate, precipitating cause was an internal ignition source. In short, he recognized that a possibility existed that blame for the explosion probably rested with Sears. However, a possibility of negligence on a defendant's part is not enough to warrant an instruction to the jury on the doctrine of res ipsa loquitur. The plaintiff must carry his burden of proof by making it appear more likely than not that the probable cause is negligence on the defendant's part. Thus, the trial court did not err in refusing the Bardys' request to instruct the jury on the doctrine of res ipsa loquitur.
Because the Bardys did not satisfy the threshold element of proving by a preponderance of the evidence that the explosion *216 was probably the result of negligence on Sears' part, it is unnecessary to discuss whether they carried their concomitant burden of establishing that, as the battery was not within the exclusive control of Sears at the time of the explosion, a justifiable basis existed for inferring that the cause of the explosion was probably Sears' negligence.
Appellants' other arguments on appeal are without merit.
Accordingly, we affirm the final judgment.
AFFIRMED.
CAMPBELL and LEHAN, JJ., concur.