511 So.2d 412 (1987)
OTIS ELEVATOR COMPANY, Appellant,
v.
Lelia CHAMBLISS and Avon Chambliss, Her Husband, Appellees.
OTIS ELEVATOR COMPANY, Appellant,
v.
SEARS, ROEBUCK & COMPANY, Appellee.
Nos. BL-401, BN-70.
District Court of Appeal of Florida, First District.
August 11, 1987.
David P. Heath of Field, Granger, Santry & Mitchell, P.A., Tallahassee, for appellant, Otis Elevator Co.
Thomas L. Powell of Douglass, Cooper & Coppins, Tallahassee, for appellees Lelia and Avon Chambliss.
Roy T. Rhodes, Tallahassee, for appellee, Sears, Roebuck & Co.
NIMMONS, Judge.
In this consolidated appeal, Otis Elevator Company (Otis) appeals from (1) a final judgment in favor of the Chambliss', who were the plaintiffs below, against Otis and Sears, Roebuck & Company (Sears), who were the defendants below, and (2) a final judgment in favor of Sears on its cross claim for indemnity against Otis. We reverse both judgments.
On October 2, 1982, Mrs. Chambliss injured her elbow when she fell on an escalator in a Sears department store in Tallahassee when the escalator stopped suddenly. The escalator was manufactured, installed, and maintained by Otis. Mrs. Chambliss and her husband brought suit against Sears and Otis, alleging, among other things, that the defendants negligently failed to maintain the escalator in a reasonably safe condition and that the escalator was defectively designed or manufactured by Otis.
Plaintiffs presented no evidence that the escalator was defectively designed or manufactured, and the jury found for Otis on that issue.[1] Nor did the plaintiffs offer any evidence as to the negligent maintenance of the escalator by Otis or Sears. No testimony suggested that Sears or Otis did or failed to do anything which could have caused the escalator to stop. In fact, the sum and substance of the evidence presented on behalf of the plaintiffs was that the Sears escalator came to a sudden stop while Mrs. Chambliss was "on board" and that as a result she fell and injured her elbow.[2]
*413 Defense witnesses testified that several factors, none of which implicated negligent maintenance, can cause the escalator to stop during normal operations. For example, there are safety switches at either end of the escalator which can be manually activated in order to shut the escalator down in emergencies. In fact, the testimony indicated that escalators must meet certain minimum government safety standards which include provision for emergency shutdown switching mechanisms. At no time did the plaintiffs attempt to introduce evidence of why the escalator stopped or evidence to indicate that it was not stopped as a result of the activation of one of the emergency shutdown switching mechanisms.
Testimony at trial established that at the entrance to the escalator was a sign that stated "Please Hold Handrail." Mrs. Chambliss testified that she never saw the sign. She testified that she did not recall whether she was in fact holding onto the handrail when she fell. However, at least one other witness indicated that she was.
The theories of liability on which the trial court instructed the jury were: (1) negligent design or manufacture by Otis; and (2) negligent failure by Sears and/or Otis to maintain the escalator in a reasonably safe condition. Over the objections of Otis and Sears, the trial court instructed the jury on the doctrine of res ipsa loquitur.[3]
The jury found the defendants equally negligent (25%) and determined that Mrs. Chambliss was herself 50% negligent, awarding a total of $12,000 to the plaintiffs. The trial judge entered judgment for the plaintiffs in the amount of $6,000, reflecting Mrs. Chambliss' contribution to the plaintiffs' (Mr. and Mrs. Chambliss') damages. Otis appealed from this judgment; Sears did not.
Thereafter, a separate hearing on the issue of indemnity was held pursuant to an agreement between Otis and Sears, the court receiving additional evidence from Otis in the form of depositions of Sears employees dealing with earlier escalator stops. At the conclusion of the evidence, the trial court concluded that Sears was without any fault and awarded indemnity to Sears. Otis appeals the award of indemnity.
The issues which we treat on this appeal are as follows:
I. WHETHER THE TRIAL COURT REVERSIBLY ERRED BY INSTRUCTING THE JURY ON THE DOCTRINE OF RES IPSA LOQUITUR.
II. WHETHER THE TRIAL COURT ERRED IN GRANTING INDEMNITY TO SEARS AGAINST OTIS.
The doctrine of res ipsa loquitur is a doctrine of "extremely limited applicability." Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So.2d 1339 (Fla. 1978). The doctrine's applicability has been described in Goodyear thusly:
Essentially, the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control. The district courts of Florida have expanded the doctrine far beyond its intended perimeters, both by liberalizing the elements requisite to its application and by allowing the development of inferences not only as to the incident *414 itself but also as to pre-incident acts, such as manufacture or production.
Plainly, the threshold inquiry is whether that which occurred is a phenomenon which does not ordinarily happen except in the absence of due care. The initial burden is on the plaintiff to establish that the circumstances attendant to the injury are such that, in the light of past experience, negligence is the probable cause and the defendant is the probable actor. An injury standing alone, of course, ordinarily does not indicate negligence. The doctrine of res ipsa loquitur simply recognizes that in rare instances an injury may permit an inference of negligence if coupled with a sufficient showing of its immediate, precipitating cause.
Id. at 1341, 1342.
The plaintiffs in the instant case totally failed to carry their initial burden of showing by appropriate evidence that negligence was the probable cause for the escalator's stopping.[4] The shortcomings in the plaintiffs' case are very much like those of the plaintiffs in City of New Smyrna Beach Utilities Commission v. McWhorter, 418 So.2d 261 (Fla. 1982), as illustrated by the following excerpt from the McWhorter opinion:
[T]he record reveals that at trial, the McWhorters showed only the occurrence and results of the city line stoppage, asserting that, since they in no way caused or were responsible for the obstruction, the damage-causing obstruction could only have been the product of negligent and improper maintenance by the city. By so limiting their presentation of evidence, the McWhorters failed to carry their initial burden of proof and neglected to demonstrate the necessary elements of the doctrine. This oversight alone precludes application of res ipsa loquitur and proves fatal to their cause.
Moreover, in contrast to the McWhorters' virtual inaction at trial, the city actively presented evidence which emphasized the inapplicability of res ipsa loquitur to this case.
Id. at 263. See also Bardy v. Sears, Roebuck and Co., 443 So.2d 212, 215 (Fla. 2nd DCA 1983); Valens v. Otis Elevator Company, 482 So.2d 479 (Fla. 3rd DCA 1986); compare Lord v. J.B. Ivey & Company, 499 So.2d 12 (Fla. 1st DCA 1986) (held that principle that plaintiff may not rely upon res ipsa where plaintiff introduces evidence of specific acts of negligence not applicable where the sole evidence of purported negligence presented by plaintiff related to the stopping distance of the escalator). See generally Annot. 1 A.L.R.4th 144 and cases discussed at 189 et seq. The Chambliss' evidentiary omissions at trial foreclosed their reliance upon res ipsa loquitur. The trial court therefore erred in instructing the jury on the doctrine over the defendants' objections.
As we have said, the jury found against the plaintiffs on the negligent design or manufacture theory of liability, and as indicated above, the jury's verdict in favor of the plaintiffs on their other theory of liability (negligent maintenance) cannot stand because there was no evidence of negligence and the plaintiffs failed to qualify for the inference of negligence afforded by res ipsa loquitur. The judgment in favor of the plaintiffs and against Otis must therefore be REVERSED.[5]
*415 Having determined that there was no basis to support the judgment entered in favor of the plaintiffs against Otis and Sears, we therefore also reverse the judgment entered in favor of Sears on its cross claim for indemnity against Otis.[6]
REVERSED.
WENTWORTH and WIGGINTON, JJ., concur.
NOTES
[1] In the special verdict form, the jury answered in the negative the question of whether the escalator had a manufacturing or design defect.
[2] Actually, the plaintiffs presented conflicting evidence as to whether the elevator stopped at all. Although Mrs. Chambliss testified that the escalator stopped and remained shut down until after she had been escorted from the area, at least one of the plaintiffs' own witnesses stated that the escalator never stopped. Still another witness, Mrs. Chambliss' former daughter-in-law, said that the escalator stopped but immediately started back up after the fall. There was also some testimony presented on behalf of the plaintiffs indicating that the escalator had stopped previously. However, there was no indication as to when that had occurred, why it had occurred, what had been done about it, or whether any passengers fell as a result thereof.
[3] The instruction given by the court is as follows:

If you find that the circumstances of the occurrence were such that in the ordinary course of events it would not have happened in the absence of negligence and that the instrumentality causing the injury was in the exclusive control of Sears, Roebuck & Company or Otis Elevator Company or both of them at the time it caused the injury, you may infer that a defendant who had control of the instrumentality was negligent, unless taking into consideration all of the evidence in the case, you conclude that the occurrence was not due to any negligence on the part of the Defendant Sears or the Defendant Otis.
[4] We should point out that the parties have not raised any issue regarding the plaintiffs' burden of showing exclusive control when there are, as here, multiple defendants against whom the plaintiffs seek to apply the doctrine of res ipsa loquitur. We, therefore, do not discuss the exclusivity element of the doctrine but would refer the reader to the following materials dealing with the exclusivity requirement in the context of cases involving multiple defendants: Prosser and Keeton on Torts, § 39, p. 251 (5th edition 1984); Harper, James & Gray, The Law of Torts § 19.7 (2d edition 1986); Restatement (Second), Law of Torts, § 328d (1964); Colmenares Vivas v. Sun Alliance Insurance Company, 807 F.2d 1102 (1st Cir.1986) (exclusivity where escalator owner/operator has maintenance contract with another party); Commercial Union Insurance Co. v. Street, 327 So.2d 113 (Fla. 2nd DCA 1976) (elevator maintenance contract providing that possession and control over the elevator remained exclusively with the owner/hospital); Waite v. Jackson's Byrons Enterprises Inc., 254 So.2d 28 (Fla. 3rd DCA 1971).
[5] We do not reach Otis' argument in which it contends that res ipsa was inappropriate for the additional reason that the plaintiffs failed to establish that Mrs. Chambliss' injuries were not the result of voluntary action or contribution on her part. As in most jurisdictions around the country, see Prosser and Keeton on Torts, § 39, p. 244 (5th edition 1984), and Restatement (Second), Law of Torts, § 328d (1964), the appellate courts of this state have long recognized as an essential element of the doctrine of res ipsa loquitur that the injury may not be the result of any voluntary action or contribution on the part of the plaintiff. Stanek v. Houston, 165 So.2d 825 (Fla. 2nd DCA 1964); Holman v. Ford Motor Company, 239 So.2d 40 (Fla. 1st DCA 1970); Waite v. Jackson's Byrons Enterprises, Inc., 254 So.2d 28 (Fla. 3rd DCA 1971); Pape v. DePew, 281 So.2d 224 (Fla. 1st DCA 1973); Brooks v. Plant, 296 So.2d 71 (Fla. 2nd DCA 1974); Cortez Roofing, Inc. v. Barolo, 323 So.2d 45 (Fla. 2nd DCA 1975); Commercial Union Insurance Co. v. Street, 327 So.2d 113 (Fla. 2nd DCA 1976); Auto Specialties Manufacturing Company v. Boutwell, 335 So.2d 291 (Fla. 1st DCA 1976); Dayton Tire and Rubber Company v. Davis, 348 So.2d 575, 584 (Fla. 1st DCA 1977) (decision quashed on other grounds, 358 So.2d 1339 (Fla. 1978)); Beach v. Halifax Hospital District, 360 So.2d 114 (Fla. 1st DCA 1978) (concurring opinion); McWhorter v. City of New Smyrna Beach Utilities Commission, 400 So.2d 23 (Fla. 5th DCA 1981) (decision quashed on other grounds, 418 So.2d 261 (Fla. 1982)).

The plaintiffs take the position that the above element should no longer be recognized because it is in contradiction to the current comparative negligence theory of tort liability applicable in this state. The plaintiffs find support in their position in Prosser and Keeton on Torts, supra, § 39, p. 254. At least seven other comparative fault jurisdictions agree with plaintiffs' position. See Dyback v. Weber, 114 Ill.2d 232, 102 Ill.Dec. 386, 500 N.E.2d 8 (1986); Montgomery Elevator Co. v. Gordon, 619 P.2d 66 (Colo. 1980); Tipton v. Texaco, Inc., 103 N.M. 689, 712 P.2d 1351 (1985); Cyr v. Green Mountain Power Corp., 145 Vt. 231, 485 A.2d 1265 (1984); Watzig v. Tobin, 292 Or. 645, 642 P.2d 651 (1982); Turtenwald v. Aetna Casualty & Surety Co., 55 Wis.2d 659, 201 N.W.2d 1 (1972); Emerick v. Raleigh Hills Hospital-Newport Beach, 133 Cal. App.3d 575, 184 Cal. Rptr. 92 (1982).
Otis points out, however, that the courts should not be so quick to assume that comparative negligence necessarily eliminates the underpinnings of this element of res ipsa. At least in this state, the doctrine of res ipsa loquitur is recognized as a doctrine of extremely limited applicability and the substantial concession which the doctrine gives to a plaintiff who is unable to demonstrate negligence of the defendant through traditionally acceptable means of proof should not be further liberalized to encompass plaintiffs whose injuries resulted from their own voluntary action or contribution. Moreover, we note that eight of the above Florida appellate cases listed above which recognize this element have been decided since the advent of comparative negligence in 1973 via Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). Admittedly, however, none of such cases has discussed the effect, if any, which comparative negligence might have upon this element of res ipsa. It is also interesting to note that, according to our research, while this element has frequently been stated as a requisite element by the district courts of appeal, such element has been notably absent from the Florida Supreme Court opinions dealing with res ipsa loquitur. In any event, as we have said, we will leave that issue to be decided another day. It is not necessary that we do so here.
[6] Subsequent to the entry of the final judgment in favor of the plaintiffs against Otis and Sears, Sears paid the judgment. Thus, Sears was not a party appellant in BL-401. Sears has not contended that its judgment on its cross claim against Otis should survive our reversal of the judgment in the main action.