165 So.2d 806 (1964)
J.D. SHARON, d/b/a Fort Walton Paint & Body Shop, Appellant,
v.
Charles R. LUTEN et al., Appellees.
No. E-245.
District Court of Appeal of Florida. First District.
June 18, 1964.
Rehearing Denied July 20, 1964.
*807 Fisher & Hepner, Pensacola, for appellant.
Charles R. Timmel, Ft. Walton Beach, for appellees.
RAWLS, Judge.
Appellant Sharon's Fort Walton Paint and Body Shop suffered a fire in the early morning of October 20, 1960 resulting in serious damage to automobiles located therein for the purposes of repair. Appellee Charles R. Luten and others in a negligence action recovered final judgment upon a jury verdict for damages sustained by their several automobiles which had been placed with Sharon for repair.
Appellant Sharon asserts on this appeal that the trial court erred in refusing to dismiss the complaint, in denying defendant's motion for a directed verdict at the conclusion of all the evidence, and denying post trial motions of defendant aimed at setting aside the verdict.
The facts are not in serious dispute. Two separate buildings  a main building which was used for repairing automobiles and a small metal building which was located at the northeast corner of the main building and which contained two air compressor units that furnished compressed air to the main building  were involved in the fire. The fire originated in the small metal building and conflict existed as to the origin of the fire  one theory being that one of the air compressors was responsible for the initial fire and another theory being *808 that it was started by lightning. Within a short period of time, the initial fire spread to the main building and as a result plaintiffs' automobiles were badly burned.
Plaintiffs based their initial complaint against defendant upon the following three theories of negligence, to wit:
1. "That the Plaintiffs are informed and believe that the cause of the fire was due to the negligence of the defendant, his agents, servants, or employees in leaving the switch of an air compressor motor in an `on' position at the completion of the previous day's work thereby causing the compressor and motor to overheat and as a result of the overheating the fire started and spread to the gas lines which had negligently been allowed to remain connected to the rubber gas hoses as set forth above.
2. "That other than the specific negligent acts as set forth above which may have been responsible for the fire and subsequent conflagration the Plaintiffs are without knowledge as to any other specific act or acts of negligence on the part of the Defendant, his agents, servants or employees which caused the fire and resultant damage to the said vehicle and is unable to determine said negligent act or acts, and the same are inaccessible to the Plaintiffs; that the Defendant, his agents, servants or employees know or should know or have the means of ascertaining the true cause of the fire and resulting damage as such fires do not ordinarily occur except as a result of some negligent act, acts, or omission, and the said negligent act, acts or omission are peculiarly within the knowledge of the Defendant, his agents, servants or employees.
* * * * * *
3. "That on or about the 20th day of October, 1960 at about 4:50 o'clock A.M. a fire broke out in the shop of the defendant while the vehicle of the Plaintiff was still in the shop and under the care, custody and control of the defendant under his agreement and contract to perform repairs; that shortly after the fire broke out it spread to an area of the shop in which there were one or several rubber hoses which were connected to a metal natural gas supply line into the building, which such gas line was equipped with a stop-cock at the joinder of the rubber hose or hoses to the metal gas line; that this gas line carried natural gas at an unusually high gas pressure; that the defendant, his agents, servants or employees negligently failed and neglected to shut off the high pressure gas supply to the rubber hoses at the end of the previous days work; that when the fire which had started reached the rubber hoses they burned off and the gas in the metal gas line escaped and continued to escape in large volume and quantity and ignited and the fire turned into a conflagration and continued to burn in that manner until the gas supply was turned off after arrival of the fire department."
Prior to the trial, defendant timely moved to strike the plaintiffs' allegation set out in paragraph 1 above, which motion the Court granted. Thus, it is noted at the outset that issue was joined by plaintiffs and defendant and trial was had upon the allegations set out in paragraphs 2 and 3, that is to say, upon the doctrine of res ipsa loquitur and upon the alleged negligent act of defendant in failing to turn off the natural gas line at a particular locale. It is significant that the jury was not presented by the pleadings with any issue as to defendant's negligence with respect to the *809 origin of the fire; therefore, we conclude from the record that as a matter of law defendant was free of any negligence in originating the fire.
We now consider the applicability of the doctrine of res ipsa loquitur. In McKinney Supply Company v. Orovitz[1] the Supreme Court of Florida in affirming a judgment for a property owner whose premises were destroyed by a fire of unknown origin held:
"Of more specific applicability to this case, it has been held that a fire of unknown origin will not of itself justify the conclusion that negligence is the most likely explanation, Davis v. Rivers, 103 Okla. 198, 229 P. 571; Watenpaugh v. L.L. Coryell & Son, 135 Neb. 607, 283 N.W. 204, and that in such a situation the res ipsa doctrine does not apply, The President Wilson, D.C.D. Cal., 5 F. Supp. 684; Prosser on Torts, 2d Ed., p. 203."
Thus, it appears that the law is well settled in this jurisdiction that the theory of res ipsa loquitur was not applicable.
Finally, we consider plaintiffs' third theory of negligence which was the only theory available for the consideration of the jury. Plaintiffs concluded in their complaint that the failure of defendant to turn off the natural gas at the metal line constituted a question of negligence for the consideration of the jury. We do not agree. It is our view that the record here presents a set of facts analogous to those in Pope v. Pinkerton-Hays Lumber Co.[2] in that the alleged negligence, occurring prior to the fire, did not contribute to the igniting of the fire which caused the damages for which reimbursement is sought. Furthermore, the plaintiffs in neither case laid the proper predicate for showing that the defendant by prudent human foresight could anticipate that the natural and probable consequences of his act would result in the loss that occurred.
The often quoted rule, relied upon by this Court in the Pope case, was stated thusly by Justice Sebring in Cone v. Inter County Tel. & Tel. Co.:[3]
"Not every negligent act of omission or commission gives rise to a cause of action for injuries sustained by another. It is only when injury to a person who himself is without contributing fault has resulted directly and in ordinary natural sequence from a negligent act without the intervention of any independent efficient cause, or is such as ordinarily and naturally should have been regarded as a probable, not a mere possible, result of the negligent act, that such injured person is entitled to recover damages as compensation for his loss. Conversely, when the loss is not a direct result of the negligent act complained of, or does not follow in natural ordinary sequence from such act but is merely a possible, as distinguished from a natural and probable, result of the negligence, recovery will not be allowed. Seaboard Air Line Ry. Co. v. Mullin, 70 Fla. 450, 70 So. 467, L.R.A. 1916D, 982, Ann.Cas. 1918A, 576. `Natural and probable' consequences are those which a person by prudent human foresight can be expected to anticipate as likely to result from an act, because they happen so frequently from the commission of such act that in the field of human experience they may be expected to happen again. `Possible' consequences are those which happen so infrequently from the commission of a particular act, that in the field of human experience they are not expected as likely to happen again *810 from the commission of the same act. * * *
* * * * * *
"The responsibility of a tort-feasor for the consequences of his negligent acts must end somewhere, and under our legal system the liability of the wrongdoer is extended only to the reasonable and probable, not the merely possible, results of a dereliction of duty. * * *" [Emphasis supplied.]
Specifically, there is in this record a complete absence of evidence showing that defendant's failure to turn off the gas line at a certain valve was such negligence that the injury was the reasonably foreseeable result of his act or was the natural and probable consequences of such negligence. In other words, it was not the duty of defendant to take the ultimate course of safety, i.e. turning off the gas line each night outside the building and thereby preventing an accumulation of gas in any line within the building, be it combustible or not, nor was it incumbent upon the defendant to shut the gas off at the valve where the combustible line joins the metal one. The reason is that in no instance in this record has plaintiff shown such to be the custom of the trade or that the damages were either the natural and probable consequence of the act or were foreseeable by defendant due to previous losses suffered in this manner by others engaged in the same industry as was defendant. The proofs submitted by plaintiffs fell short of establishing a basis for liability. We conclude that the damages suffered were due to the fire  not to some omission by defendant of a duty to act according to a standard of care assigned to him by plaintiffs. Judgment is, therefore,
Reversed.
STURGIS, C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] McKinney Supply Company v. Orovitz, 96 So.2d 209 (Fla. 1957).
[2] Pope v. Pinkerton-Hays Lumber Co., 120 So.2d 227, 230 (Fla.App.1st, 1960).
[3] Cone v. Inter County Tel. & Tel. Co., 40 So.2d 148, 149 (Fla. 1948); See also General Telephone Company v. Mahr, 153 So.2d 13 (Fla.App.2d, 1963).