348 So.2d 575 (1977)
DAYTON TIRE AND RUBBER COMPANY, Appellant,
v.
Clyde E. DAVIS, Individually, and Clyde E. Davis, Administrator of the Estate of Ronnie Davis, Deceased Minor, Appellee/Cross-Appellant,
v.
JOHN MOTT'S SUNOCO SERVICE, INC., Cross-Appellee.
No. Z-378.
District Court of Appeal of Florida, First District.
June 29, 1977.
Rehearing Denied August 22, 1977.
*577 Joe C. Willcox, of Dell, Graham, Willcox, Barber, Rappenecker, Ryals & Henderson, Gainesville, for appellant.
Kenneth R. Cate, of Billings, Frederick, Wooten & Honeywell, Orlando, for appellee/cross-appellant.
William C. O'Neal, of Chandler, O'Neal, Gray & Lang, Gainesville, for cross-appellee.
BOYER, Chief Judge.
This is an appeal from a final judgment entered on a jury verdict in a case brought by Clyde E. Davis individually and as administrator of the estate of Ronnie Davis, a *578 deceased minor, against Dayton Tire and Rubber Co. and John Motts Sunoco Service, Inc.
The basic facts are: On November 25, 1970, Ronnie Davis, the minor son of the plaintiff Clyde E. Davis, was fatally injured in an automobile accident which allegedly occurred as a result of a tire "blow-out". The subject tire, a Dayton 9-70 Sport Tire was manufactured by defendant Dayton, purchased by Davis from defendant Mott and installed on the wheel of the Davis car by one of Mott's employees. At the time of the accident the tire was approximately six months old and had been driven approximately 4,000 miles.
Several points have been raised and briefed. Since we find that we must reverse for a new trial we will consider and discuss separately each point raised which reasonably may be expected to again become an issue upon retrial. Additional facts relevant to the issue under consideration will be reserved for that point in this opinion. Facts which, though relevant to the case, are not pertinent to resolution of any particular issue before us will be omitted unless recitation is necessary for cohesiveness or understanding.
We will first consider the cross-appeal by appellee Davis, plaintiff in the trial court, wherein he seeks review of that portion of the final judgment in favor of John Mott's Sunoco Service, Inc. Mott, by motion to dismiss the cross-appeal, has raised several academically interesting points which, however, we find unnecessary to decide because of our determination that the issues raised by the cross-appeal are without merit.
Count four of the amended complaint dealt with alleged negligence on the part of Dayton. It was there charged that Dayton used defective material in the construction of the subject tire, failed to make necessary and reasonable inspection of the tire and failed to warn Davis of the defects. Count five alleged that as the retail seller of the tire Mott had a duty of inspecting the tires which it sold for defective and unsafe conditions and of warning purchasers of potential dangers. It was further charged that Mott knew, or by the exercise of ordinary care and reasonable inspection should have discovered, the defective condition of the tire and that he should have warned the plaintiff concerning it. It was also alleged that Mott had the duty of instructing the decedent and the plaintiff, who had accompanied his son when the tire was purchased, concerning the use of the tire. There was evidence by experts that the tire was in fact defective and evidence by others that it was not. The cause of the defect was also in controversy. However, there was no evidence at all that if indeed the tire was defective when sold that the defect was discoverable by the retailer. In point of fact, all evidence on that specific point was to the contrary.
One witness testified that he observed a cut or rupture on the inside of the valve stem. He did not know whether Dayton made the valve stem nor could he testify as to when the rupture or tear occurred and had no way of knowing whether the valve stem was defective on the date of the sale of the tire by Mott to Davis. Mott's attorney objected to the evidence regarding the valve stem as not being within the issues framed by the pleadings whereupon the plaintiff's attorney moved to amend the pleadings "to conform to the evidence as it developed at trial", urging there and here that amendments to pleadings are to be freely allowed, citing Fla.R.Civ.P. 1.190. The learned trial judge properly denied that motion. A trial judge has a very broad discretion in determining whether to permit an amendment to the pleadings, particularly when the motion is made after commencement of the trial. It is axiomatic that, when properly objected to, evidence on issues not framed by a reasonable construction of the pleadings should be rejected. The record before us reveals that the pleadings were confined to the tire itself and not the "entire pressure vessel" (presumably the tire, wheel and valve stem) as now phrased and urged by the plaintiff. The record also reveals that Mott's attorney objected at his first opportunity to any evidence not related to the tire itself and that *579 that objection was sustained. Accordingly, there was no evidence to which the pleadings could have been amended to conform.
Davis cites Hart Properties, Inc. v. Slack, 145 So.2d 285 (Fla. 3d DCA 1976) for the proposition that amendments to the pleadings should be allowed at any stage where such amendments will foster the interest of justice and not lead to prejudice to the opposing party. We have no quarrel with that proposition. However, the term "interest of justice" is applicable to all parties, not just plaintiffs. The record sub judice is sufficient to sustain the implicit finding of the trial judge that to have allowed an amendment of the pleadings in the middle of the trial to raise an issue not theretofore contemplated would have resulted in an injustice to the defendant Mott.
In his assignments of error Davis alleges that the trial court erred in granting Mott's motion for a directed verdict "on the issue of negligent inspection of the tire which blew out on plaintiff's decedent's vehicle." Although a point is presented in Davis' brief as to the propriety of the direction of verdict in favor of Mott, at no place in the argument on that point is there any statement that a verdict was directed, nor as to whether the direction of verdict was only partial or complete as to liability; nor is there any reference to the pages of the nine volume record-on-appeal to lead us to the portion of the record pertaining to the directed verdict. Mott's brief, also sans reference to the record, states that the trial court directed a verdict for Mott "on the question of negligent inspection or failure to inspect the tire in question." The final judgment here appealed quotes the jury verdict which contains, inter alia, the sentence "We, the Jury find for the Defendant, John Mott."
Fla.App. Rule 3.7 f.(3) clearly requires reference to the pages of the original record. The purpose of that rule is to guide the judges of the court, when reading the briefs, to the relevant portions of the record to resolve conflicts and confusion in the assertions contained in the briefs. It would not be inappropriate, upon a finding of a flagrant disregard of that rule, for the court to strike the parties' brief.
We find no demonstration by appellant of error in the direction of the verdict in favor of Mott.
Finally by way of the cross-appeal, Davis urges error in the admission of testimony of the investigating police officer concerning air pressure found after the accident in the tires on the Davis car which did not blow out. The evidence was admitted at the instance of Dayton apparently for the purpose of bolstering its contention that the tire failure resulted from underinflation. Davis argues that such evidence was not admissible as circumstantial proof of underinflation prior to the fatal accident because the evidence revealed presence of grass between the wheel rim and the bead of the tire. We are of the view that such matters affect the weight of the evidence and not its admissibility; weight of the evidence, under such circumstances, being for the trier of fact. The trial judge did not therefore so err.
The judgment appealed, insofar as it relates to John Mott's Sunoco Service, Inc., is affirmed.
We now turn to consideration of the points raised by Dayton, that defendant having appealed the final judgment against it in the sum of $90,000 in accordance with the verdict of the jury.
Four experts testified at the trial, two at the behest of the plaintiff and two at the behest of Dayton. Mr. Frank Flannigan, called as an expert witness by the plaintiff, testified that the tire which blew out failed because of a separation in the plies of the sidewall which could have been caused either by a blow to the tire or by a defect in manufacture. He did not, however, find a defect in the tire. Dr. Kurt, plaintiff's second expert witness, testified that it was his opinion that a defect which caused the blow out was in the tire at the time it left the factory. The defective condition, he opined, consisted of burned and thereby weakened polyester cords within the tire which, he testified, could only have been *580 burned prior to installation in the tire since there was no indication of heat in the rubber surrounding the burned cords to suggest that the heat could have occurred after the tire had been assembled. He was, however, unable to identify the source of the heat which he opined caused the defect and deteriorated condition, testifying that the heat would have to have been sufficient to melt the polyester and that although he was familiar with tire manufacturing plants he had never seen a source of heat in the manufacturing process which would produce the deterioration which he described. He further testified that the tire curing process could produce neither the necessary heat nor the spot burning which he testified occurred.
As might be expected, the two experts called by Dayton contended that the tire failed because of extensive operation while underinflated. The director of engineering and development for Dayton stated that the subject type of tire was cured at a temperature of 300 degrees produced by hot steam incapable of concentrating heat in any one particular spot; that he did not know of any place in the plant where a particular portion of fabric could be subjected to heat higher than 300 degrees and that he found no evidence of a manufacturing defect. Another expert, an engineer and the president of Smithers Scientific Services, a testing and consulting laboratory, testified that the deteriorated polyester cord had to have been exposed to a temperature of 445 degrees; that such temperatures were produced by running tires low or underinflated; that there was no point in the manufacturing process within the tire factory that produced such heat to a spot of the applied fabric and that the subject tire showed evidence of abuse such as fast starts, stops, spinning and running at high speeds.
At the close of the evidence Dayton moved for a directed verdict in its favor which was denied. It now claims such denial to have been error.
It is not our prerogative, nor was it the prerogative of the trial judge, to determine which expert to believe. (See Cromarty v. Ford Motor Co., 341 So.2d 507 (Fla. 1977). Although Dr. Kurt could not identify the source of the heat which he testified caused the defect in the cords he clearly asserted that in his opinion the tire failed because of a defect which was present during the manufacturing process and the jury could have concluded that, regardless of the source of the heat which damaged the cords, the damage should have been discovered by reasonable inspection prior to final application of the rubber and curing of the tire. The trial judge did not err in denying Dayton's motion for directed verdict.
At the conclusion of all of the evidence the learned trial judge granted plaintiff's motion for a directed verdict as to Dayton's affirmative defense that the deceased was guilty of negligence which was a contributing legal cause of the injury. In so doing he erred. The defense as pleaded included the following:
"Plaintiffs ought not to recover for that at and immediately prior to the time of the accident either the Plaintiff Clyde E. Davis or the said Ronnie Davis negligently maintained the automobile tire in question by failing to keep the tire properly inflated, or in the alternative by operating the automobile while said tire was deflated, or in the alternative by improperly using the said tire so that damage resulted from such improper use and such negligence was a legal contributing cause of said accident."
A directed verdict should not be granted unless the evidence is such that under no view which the jury might lawfully and reasonably take of the evidence favorable to the adverse party could a verdict for the latter party be sustained. Sub judice the evidence revealed that plaintiff Clyde E. Davis, father of the deceased, was experienced in installation and maintenance of tires; that he had instructed his son, the deceased, in the importance of maintaining proper air pressure; that the deceased recognized the importance of maintaining proper pressure in his automobile tires; that (according to the experts called by *581 Dayton) the subject tire had been run to failure in an underinflated condition; that the remaining tires on the subject vehicle were found to have been severely underinflated and that (according to one of Dayton's expert witnesses) the subject tire had been subjected to misuse. As already recited, Mr. Flannigan, called as an expert by the plaintiff, testified that failure could have resulted from an external blow.
Although the evidence was conflicting there was obviously substantial competent evidence from whence the jury could have determined that the deceased's own negligence contributed to the causation of the accident and resulting injuries.
Over the objection of Dayton's attorney the trial judge charged the jury:
"As to the negligent failure to inspect and warn theory, when a distributor of an inherently dangerous commodity places it in the channel of trade, then by the very nature of his business, he assumes the duty of conveying to those who might use the product a fair and adequate warning of its dangerous potentialities, this is so the user by the exercise of reasonable care on his part shall have a fair and adequate notice of the possible consequences of use or even misuse. Additionally, the manufacturer of such a product has a duty to use reasonable care in the inspection of such a product so as to determine whether such product contains defects which might endanger the life, health or property of the ultimate user of the product. The measure of the duty of the manufacturer of an inherently dangerous commodity is that of reasonable foreseeability of injury that might result from the use of the commodity.
"Therefore, if you find that the defendants, Dayton Tire and Rubber Company and John Mott's Sunoco, did not act reasonably in conveying adequate warnings to the user of the tires which they sold, then you're instructed that the defendants are liable in negligence for the damages sustained by the plaintiff in this case."
Dayton urges five separate objections to that charge, the primary attack being the assertion that a tire is not an inherently dangerous commodity.
In Tampa Drug Company v. Wait, 103 So.2d 603 (Fla. 1958), the Florida Supreme Court discussed a limited category of inherently dangerous commodities and the higher standard of care owed by the manufacturer and retailer to the consumer using such products. In that case the plaintiff sued Tampa Drug for a wrongful death caused by the inhaling of carbon tetrachloride fumes by the decedent while cleaning his home. The Court there stated:
"We are not here dealing with liability resulting from a defect in an article that is ordinarily harmless. As previously pointed out we here consider the problem as it relates to an inherently dangerous commodity; that is, a commodity burdened with a latent danger which derives from the very nature of the article itself. With regard to this type of article the liability of the manufacturer or distributor is predicated on a failure to give adequate warning of the inherent danger." (103 So.2d at page 608; emphasis added)
Thus, the court imposed a strict duty to adequately warn the consumer of a product's dangerous propensities when that product by its very nature, free of defect, is dangerous. That definition remains viable. (See e.g. Walker v. National Gun Traders, Inc., 116 So.2d 792 (Fla. 3d DCA 1960); Williams v. Caterpillar Tractor Co., Inc., 149 So.2d 898 (Fla. 2d DCA 1963); and Edwards v. California Chemical Company, 245 So.2d 259 (Fla. 4th DCA 1971).)
It follows that in order to properly label a commodity inherently dangerous, it must be dangerous in and of itself. The fact that it becomes dangerous due to a defect does not necessarily make the product an inherently dangerous commodity requiring the stricter duty of care. While other decisions tend to confuse various terms such as "inherently dangerous due to a defect", and "inherently dangerous due to defective design", (See e.g. Favors v. Firestone Tire and Rubber Company, 309 So.2d 69 *582 (Fla. 4th DCA 1975); and Matthews v. Lawnlite Company, 88 So.2d 299 (Fla. 1956)) the law remains that the manufacturer and retailer have a strict duty to warn of a product's dangerous propensities only in those instances where the commodity is a product of the nature described in the Tampa Drug case. The types of products placed into this limited category by the Florida courts are highly toxic materials, (Tampa Drug Company v. Wait, 103 So.2d 603 (Fla. 1958) dynamite, (Edwards v. California Chemical Company, 245 So.2d 259 (Fla. 4th DCA 1971) second hand guns (Southern Pine Extracts Company v. Bailey, 75 So.2d 774 (Fla. 1954) and drugs (Lake v. Konstantinu, 189 So.2d 171 (Fla. 2d DCA 1966)).
Logically, an automobile tire cannot be said to be dangerous in and of itself in the same manner as dynamite or carbon tetrachloride. When used in its ordinary and intended fashion, a tire presents no danger whatsoever. Indeed, in Odum v. Gulf Tire and Supply Co., 196 F. Supp. 35 (N.D.Fla. 1961) a federal district court in Florida stated that a tire is not an inherently dangerous commodity. In that case plaintiff sued a wholesaler and retailer for injuries sustained when a tire exploded on a mounting device, allegedly due to the negligence of the manufacturer in producing a defective tire. The court concluded that the retailer had no duty of inspection for latent defects because a tire is not an inherently dangerous commodity and therefore did not require that standard of care. While that case did not specifically address the duty of a manufacturer to warn of the dangerous propensities of a tire, by refusing to call a tire an inherently dangerous commodity the court implied that the standards applicable to such products would not be applicable to an automobile tire.
By labeling the tire an inherently dangerous commodity, as a matter of law, the trial court required the jury to find the defendant negligent if it found a failure to inspect and warn, even if such failure did not constitute negligence.
The effect of the nomenclature, "inherently dangerous commodity," in the jury instruction was to remove from the jury's determination any question of whether a tire is in fact an inherently dangerous commodity, and whether or not a failure to inspect and warn constituted negligence. Instead the jury was required to assume the tire to be an inherently dangerous commodity and to find negligence if it found a failure to adequately inspect and warn. The standard of care with regard to sale of a product which is not an inherently dangerous commodity does not necessarily require a duty to warn. Except with regard to products which are inherently dangerous as a matter of law, whether or not the manufacturer or retailer should have warned the consumer of a product's dangerous propensities is a question for the jury based upon the manufacturer's foreseeability of injury to the consumer. (See 1 Frumer and Friedman, Products Liability, Sec. 8 (1975)). The trial court was, of course, at liberty to charge the jury in accordance with the theory of plaintiff's case that one issue for determination by the jury was whether Dayton was negligent in failing to give adequate warnings concerning tire inflation, but the jury should not have been instructed in such a manner as to lead them to the belief that a tire is, per se, an inherently dangerous commodity.
The case of Vandercook and Son, Inc. v. Thorpe, 322 F.2d 638 (5th Cir.1963) (remanded on other grounds on rehearing, 5 Cir., 334 F.2d 930 (1965)) demonstrates the foreseeability standard in Florida. In that case plaintiff sued a manufacturer for injuries sustained when a printing press malfunctioned, crushing plaintiff's hand. The District Court denied the plaintiff's motion for a directed verdict stating that the burden was on the plaintiff to prove that the defendant negligently failed to warn of an inherent danger of which it knew or should have known. While the use of the term "inherent" is confusing, the court did not consider the press an "inherently dangerous commodity," but rather imposed upon the plaintiff the burden of showing a defect of which the manufacturer should have warned. The Court stated:

*583 "... Vandercook testified that of approximately 1,000 machines similar to the one in question here, not one had ever malfunctioned as the plaintiff claimed this one did. It seems reasonable to conclude that with this history of performance the defendant in the absence of other proof was not obliged to warn of a danger which it had no reason to suspect or foresee and the cause of which the proof did not establish." (322 F.2d at pages 644, 645)
The case sub judice involves a similar situation. The defendants' testimony was to the effect that the subject tire was not defective, that a defect such as described by plaintiff's expert had never been reported or seen, that there was no reason to believe it was defective, nor that it would blow out under normal use. While there was some language in the jury instruction relating to foreseeability of injury, that foreseeability went to the adequacy of the warning of the product's dangerous potentialities rather than warnings concerning its malfunction or defect. In his amended complaint the plaintiff alleged a failure to inspect and warn of the defects in the tire. That is quite different from a failure to inspect for defects and warn of the dangerous propensities of all automobile tires regardless of whether they are defective.
Since the plaintiff's action for negligence was based on the contention that the decedent's injuries were caused by the blowout of a negligently manufactured tire in which a defect existed at the time it left the factory and for which the manufacturer had not inspected nor warned, the subject jury instruction, completely obviating the necessity of finding such a defect in determining the defendant's negligence, was erroneous.
Finally, we consider by far the most difficult issue presented in this appeal, viz: Whether, under the evidence presented, the trial court committed reversible error by charging the jury on the doctrine of res ipsa loquitur. The term "res ipsa loquitur" literally translated means "the thing speaks for itself."
While charging the jury, the trial court gave the following instruction on res ipsa loquitur:
"If you find that the circumstances of the occurrence were such that, in the ordinary course of events, it would not have happened in the absence of negligence, and that the instrumentality causing an injury was in the exclusive control of the defendant, Dayton Tire and Rubber Company at the time the negligent act or omission, if any, must have occurred and that the instrumentality, after leaving that defendant's control, was not improperly used or handled by others or subjected to harmful forces or conditions, you may infer that that defendant was negligent, unless taking into consideration all of the evidence in the case, you conclude that the occurrence was not due to any negligence on the part of that defendant."
Dayton levels no attack upon the form of the instruction but urges that it simply should not have been given.
This Court, in Holman v. Ford Motor Company, 239 So.2d 40 (Fla. 1st DCA 1970), on page 44 of that opinion, succinctly set forth the conditions for application of the doctrine as follows:
"The next question raised by appellant is the trial court's refusal to instruct the jury on the doctrine of res ipsa loquitur. Appellant contends that he was entitled to a jury instruction on said doctrine under authority of the decisions in Yarbrough v. Ball U-Drive System, 48 So.2d 82 (Fla. 1950), and Stanek v. Houston, 165 So.2d 825 (Fla.App. 1964). We agree and reverse. In Stanek the court stated that the doctrine is but a rule of evidence which establishes a permissible inference which may, but need not, be drawn by the jury in its determination of whether the defendant was at fault for the damage complained of. The doctrine may be relied upon by the plaintiff when the following conditions are met: (1) the instrumentality involved was within the exclusive control of the defendant at the time of the injury, both as to operation *584 and inspection; (2) the injury was not the result of any voluntary action or contribution on the part of the plaintiff; and (3) the accident would not have occurred had the defendant used due care. Appellee concedes that the first requirement set forth concerning exclusive control by the defendant is not vitiated by the fact that appellant was in sole possession and control of the automobile at the time the accident occurred. The concession is consistent with the more modern view of the possessory element of the res ipsa doctrine expressed by the court in the Yarbrough case, supra, 48 So.2d at page 84: "`* * * We are not troubled with the absence here of the element of exclusive control by the defendant of the thing causing the injury, for this case, in our opinion, falls within the exception to the rule like [citing exploding bottle cases]. * * * Appellee had control of the truck in question up to the very time it was entrusted to Yarbrough, and that satisfied this requirement of the rule.'"
The law is so well settled as to require no citation of authority that a party is entitled to have the jury instructed on his or her theory of the case being tried if there is evidence in the record from whence the jury could find a foundation for that theory. The fact that the evidence is conflicting or subject to different inferences or interpretations does not preclude the giving of an appropriate charge. Resolution of conflicts in the evidence is the province of the jury. An instruction on the doctrine of res ipsa loquitur is no exception to the rule. Where the evidence is conflicting or subject to different inferences, it is for the jury, under a proper instruction, to determine whether each of the conditions necessary to bring into play the doctrine of res ipsa loquitur are present. The conclusion that negligence is the most likely explanation of an accident is not for the trial court to draw, or to refuse to draw, so long as the record reveals sufficient evidence to permit the jury to draw the inference. That is so even though the court itself would not draw the same inference. The court must leave the question to the jury where reasonable persons may differ as to the balance of probabilities. The inference of negligence, in order to invoke the doctrine of res ipsa loquitur, is not required to be an exclusive nor compelling one. It is enough that the court cannot say that reasonable persons could not draw such an inference.
Judge Mills, in a well-reasoned opinion of this Court (Auto Specialties Mfg. Company v. Boutwell, 335 So.2d 291 (Fla. 1st DCA 1976), cert. dism. 341 So.2d 1080 (Fla. 1976), said:
"The doctrine of res ipsa loquitur is available in products liability cases. It may be used when (1) the instrumentality involved was within the exclusive control of the defendant at the time of the act of negligence, both as to operation and inspection; (2) the injury was not the result of any voluntary action or contribution on the part of the plaintiff; and (3) the accident ordinarily would not have occurred had the defendant used due care. Holman v. Ford Motor Co., 239 So.2d 40 (Fla.App. 1st, 1970); Yarbrough v. Ball U-Drive System, 48 So.2d 82 (Fla. 1950). "Although the facts in this case were conflicting, the Boutwells were entitled to have the jury instructed on their theory of the case which included the doctrine of res ipsa loquitur. * * *" (335 So.2d at p. 292; emphasis added)
In the same opinion Judge Mills further stated:
"The court failed to instruct the jury that for it to infer that Auto Specialties was negligent it had to find that the instrumentality causing the injury to Boutwell was within the exclusive control of Auto Specialties at the time the negligent act or omission, if any, must have occurred. * * * The court committed prejudicial error." (335 So.2d at p. 293)
Sub judice there was no controversy but that the incident which caused Ronnie Davis' death was the automobile accident which occurred on November 25, 1970. Further, there was no real controversy at trial but that the automobile accident was caused by a tire blowout. The query then *585 became: What caused the tire to blow out. Obviously if the blowout resulted solely from actions or omissions on the part of Davis then there can be no right of recovery. It was determined at trial, and we have affirmed, that Mott was not responsible. It follows then that in order for Davis to recover against Dayton on the theory of negligence some action or omission which caused the blowout must be visited upon Dayton. On that issue there was evidence both pro and con. As already recited, the witnesses called by Dayton testified that the blowout was not caused by any act or omission on the part of Dayton. However, one of the witnesses called by the plaintiff clearly and unequivocally testified that the cause of the blowout was tire failure; that the tire failure was caused by weakened cords inside the tire; that the cords were weakened as a result of being burned and that the burn occurred prior to the exterior rubber being applied to the tire which, by application of common logic and deductive reasoning, means during the manufacturing process. The witness could not, of course, testify as to what caused the burn.
It was at that stage that the plaintiff sought to have applied the doctrine of res ipsa loquitur, urging that the situation speaks for itself and that if indeed the tire failed because of burned cords as the witness had testified and if those cords were burned while the tire was in the exclusive control of Dayton, viz: during the process of manufacture, as the last above mentioned witness' testimony suggested, then a fortiori the defect could only have resulted from negligence on the part of Dayton's employees either in burning the cords or in failing to properly inspect before application of the rubber to the cords.
Clearly res ipsa loquitur is not applicable to the automobile accident. Automobile accidents do not speak for themselves. Neither does the doctrine of res ipsa loquitur generally apply to tire failure cases. As the evidence in the case sub judice clearly demonstrated, tires may fail from many causes. Tire failure does not speak for itself. Therefore the threshold question is not whether a tire failure, after substantial use of the tire, of itself justifies the conclusion that negligence is the most likely explanation; nor is the threshold determination whether the accident was of a sort that ordinarily does not occur in the absence of someone's negligence. However, if the jury believed that the tire failure resulted not from abuse nor external damage, nor from overheating as a result of being driven under-inflated, but rather that the failure resulted from damaged cords inside the tire which were damaged prior to manufacture of the tire being completed and which was damaged at the time they were incorporated in the tire then they were entitled to apply, and the plaintiff was entitled to have a jury instructed on, the doctrine of res ipsa loquitur. Indeed, such a situation poses a classic example for the application of res ipsa loquitur. As in Byrne v. Boadle, 2 H. & C. 722, 159 Eng.Rep. 299 (Ex. 1863), from whence the doctrine has its genesis in an erudite exclamation phrased in Latin by Baron Pollock, the mere fact of the incident (if the jury should find it to have been a fact) is evidence of negligence. In that case Boadle's barrel of flour fell from his second story window onto Byrne who never knew what hit him and who could not possibly demonstrate negligence as the cause of the falling barrel. Baron Pollock exclaimed "Res ipsa loquitur!". The incident did indeed speak for itself! Sub judice there was evidence from whence the jury could have believed and found that the cords in the tire were burned prior to incorporation in the tire. All of the evidence was to the effect that under normal circumstances there was no source of heat in the manufacturing plant which could have so "spot-burned" the cords. It was, of course, impossible for the plaintiff to prove the source of the heat. It was unnecessary for him to do so. Like Boadle's tumbling flour barrel, the spotburned cords in Dayton's tire (if the jury found such to exist, which was its prerogative) could have only been incorporated in the tire as a result of negligence.
As already stated, a party is not precluded from a requested instruction simply because his adversary has adduced evidence *586 which, if believed by a jury, would render the instruction inapplicable. On the contrary, if credible evidence has been adduced based upon which, and if believed by a jury, the jury may properly apply the law sought to have charged via the requested instruction then that instruction should be given. It is for the jury, not the judge, (trial or appellate) to determine which evidence is true and the jury is entitled to be charged upon the law applicable to such evidence as it finds to be true.
Although the evidence was conflicting and if weighted by numbers of witnesses preponderated in favor of Dayton, nevertheless there was substantial competent evidence from whence reasonable jurors could have found that (a) Ronnie Davis died as a result of an automobile accident which (b) was caused by a blow-out which (c) resulted from a defect in the tire manufactured by Dayton which (d) was defectively manufactured by reason of (e) incorporation of burned cords which (f) were burned in Dayton's plant prior to being incorporated in the tire and that (g) the thing speaks for itself, viz: But for negligence either in burning the cords or in failing to inspect the cords or in failing to detect upon inspection the defect would not have occurred.
The fact that there was contradictory evidence from whence the jury could have found res ipsa loquitur inapplicable did not obviate the right of the jury to have the instruction.
Under the peculiar evidence of this particular case we find that the challenged instruction was properly given.
Although we would perhaps not go quite so far, our sister court of the Fourth District in Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 336 So.2d 1221 (Fla. 4th DCA 1976) (cert. granted and pending in Supreme Court) held res ipsa loquitur applicable in a remarkably similar case involving a tire which blew out after having been driven 9,500 miles, saying:
"To summarize, in Florida, res ipsa loquitur is a rule of evidence and applies only in those factual situations wherein the evidence reflects the occasion would not have occurred in the absence of negligence and there is some evidence warranting a reasonable inference the defendant is responsible therefor and all other elements of the rule, considering its exceptions, are met." (336 So.2d at p. 1224)
Affirmed in part and reversed in part and remanded for further proceedings consistent herewith.
MILLS, J., concurs and SMITH, J., concurring and dissenting.
SMITH, J., concurring and dissenting:
I concur in the court's disposition of all issues except the propriety of a res ipsa loquitur charge supporting plaintiff's claim against Dayton. On that issue I dissent. The res ipsa charge should be reserved for those exceptional cases in which the very character of the accident, unaided by plaintiff's evidence tending to isolate the cause as defendant's negligence, may properly be considered by the jury as creating an inference of negligence. In this case the inference of negligence did not arise from the blowout, speaking for itself, but from plaintiff's other circumstantial evidence tending to show decedent did not underinflate or otherwise abuse the tire, the tire was not exposed to other extraordinary use or damaging impact, and the failure was due to fibers weakened by the manufacturing process. Dayton's evidence was to the contrary in every important respect.
Entirely apart from whether a res ipsa charge was made inappropriate by Dayton's conflicting proof of underinflation by decedent,[1] no inference of negligence can arise *587 from the failure, considered alone, of a tire driven 4,000 miles. Common sense does not suggest negligence, let alone manufacturer's negligence, as the probable cause of such an accident. In such a case, a res ipsa charge is but a finishing stroke, administered by the charging judge, in a plaintiff's case which is built step by step until the last on ordinary circumstantial evidence that defendant was negligent and plaintiff's decedent was not. There the charge is sheer judicial argument for a plaintiff's verdict and is inappropriate.
I am aware of no reported decision in any jurisdiction, except the Fourth District's decision in Goodyear, supra n. 1, holding or implying that tire failure after substantial exposure to the vicissitudes of road travel gives rise, of itself, to an inference that someone was negligent. The Restatement,[2] Prosser,[3] and several decisions are to the contrary. Shramek v. General Mot. Corp., Chev. Mot. Div., 69 Ill. App.2d 72, 78, 216 N.E.2d 244, 249 (1966); Mullen v. General Mot. Corp., 32 Ill. App.3d 122, 336 N.E.2d 338 (1975); Williams v. U.S. Royal Tires, 101 So.2d 488 (La. App. 1958); and Wojciuk v. United States Rubber Co., 19 Wis.2d 224, 233, 120 N.W.2d 47, 52 (1963). See also Markwell v. Gen. Tire & Rubber Co., 367 F.2d 748 (7th Cir.1966).
The threshold question is whether a tire failure after 4,000 miles "of itself justif[ies] the conclusion that negligence is the most likely explanation." McKinney Supply Co. v. Orovitz, 96 So.2d 209, 211 (Fla. 1957); Sharon v. Luten, 165 So.2d 806, 809 (Fla. 1st DCA 1964); 1 Frumer and Friedman, Products Liability § 12.03[2] (1976); see also Yarbrough v. Ball U-Drive System, Inc., 48 So.2d 82, 83 (Fla. 1950); Holman v. Ford Mot. Co., 239 So.2d 40, 44 (Fla. 1st DCA 1970). Common sense readily distinguishes this case from those in which res ipsa loquitur instructions were approved because a tire exploded as it was being mounted. Baker v. B.F. Goodrich Co., 115 Cal. App.2d 221, 226, 252 P.2d 24, 27 (1953) ("Automobile tires properly constructed do not explode when inflated in the process of being mounted in the usual and customary manner upon a wheel designed to receive them."); Ewer v. Goodyear Tire and Rubber Co., 4 Wash. App. 152, 480 P.2d 260 (1971) (tire exploded while being mounted). See also Dunn v. Vogel Chev. Co., 168 Cal. App.2d 117, 120, 335 P.2d 492, 495 (1959) (when brakes failed the same day and within 72 miles after repair, "certainly it cannot be said that brakes ordinarily fail immediately after repair."), which relied on Baker and was in turn relied on by this Court in Holman, 239 So.2d at 45. Both Holman, involving a brake failure "within a few blocks and minutes after appellant took possession of the car" after brake repairs, 239 So.2d at 42, and Yarbrough, in which the drive shaft fell out of a truck 20 miles after its rental, 48 So.2d at 83, are in the mainstream. By contrast, the case now before us is similar to United States Rubber Co. v. Bauer, 319 F.2d 463, 468 (8th Cir.1963), which held res ipsa inapplicable to a breaking drive belt which "had been on the plaintiff's combine for almost a year."
*588 Although the decisions foreclosing a res ipsa loquitur instruction in these circumstances are variously reasoned  some suggesting the opportunity for intervening damage was too great, others simply noting the time interval without elucidation  I am persuaded those decisions rest primarily on a clear perception that such an accident does not, without aid of plaintiff's evidence tending to isolate the cause as defendant's negligence, "speak for itself" as in Byrne v. Boadle, 2 H. & C. 722, 159 Eng.Rep. 299 (Ex. 1863).
In Byrne, res ipsa was an unaffected and intelligible appeal to the most basic reasoning powers of judges and juries: it is untrue that negligence can never be "inferred from the mere happening of an accident alone",[4] because some accidents by their nature suggest negligence and point to the responsible party even when evidence is unavailable.[5] The thing speaks for itself. Thus Baron Pollock refuted the doctrinaire "never" as simply as Dr. Johnson, by kicking a boulder, is said to have refuted Berkeley's theory of the nonexistence of matter. The Byrne decision was heavily influenced by plaintiff's inability to extract an explanation from defendant.[6] But today, more than a hundred years after Boadle's flour barrel fell on Byrne from a second story window, the adverse witness rule, modern discovery methods and the resourcefulness of expert testimony have penetrated many mysteries of that era and have made rare the cases "where direct proof is wanting."[7] And res ipsa, far from withering by the removal of its original cause, has become an expanding and complex doctrine, unruly in application. Its recent history in Florida is strewn with the wreckage of reversed judgments[8]  hardly a favorable commentary on our understanding and consistent application of a simple idea concerning the accident that "speaks for itself."
The disarray of res ipsa loquitur may be attributed to "the strong general trend towards strict liability and social insurance  a trend which is corroding a system of liability nominally based on fault"[9] and, *589 as in this case, to confusion stemming from plaintiff's reliance both on res ipsa and on sophisticated and specific evidence of negligence. Our Supreme Court stated in West Coast Hospital, supra n. 7, that "one may not avail himself of the doctrine if he proves specific negligence," 52 So.2d at 804, and expressed the same thought in Roth v. Dade County, 71 So.2d 169, 170 (Fla. 1954), but silently retracted those statements in McKinney Supply Co. v. Orovitz, 96 So.2d 209 (Fla. 1957). The Court later held the West Coast Hospital and Roth statements were obiter dicta and, by discharging certiorari, let stand the conflicting decision in South Florida Hosp. Corp. v. McCrea, 112 So.2d 393 (Fla.3d DCA 1959), cert. dism., 118 So.2d 25 (Fla. 1960). Reliance on both res ipsa and specific proof of negligence has since become commonplace. National Airlines, Inc. v. Fleming, 141 So.2d 343 (Fla.1st DCA 1962); Kulczynski v. Harrington, 207 So.2d 505 (Fla.3d DCA 1968); Cortez Roofing Co., Inc. v. Barolo, 323 So.2d 45 (Fla.2d DCA 1975).
In any putative res ipsa case, it is necessary for the court to consider "the circumstances" in determining whether the jury could find the accident "speaks for itself" concerning negligence. There are no pure tire blowout cases; rather, there are cases in which a new tire exploded while being mounted on the rim, and cases in which a tire failed after 4,000 miles of driving. The accident that "spoke for itself" in Byrne v. Boadle was not simply a barrel falling, but a barrel falling "from a window above in defendant's house and shop," at the door of which stood a horsedrawn cart ladened with barrels of flour. The abstract problem of identifying the circumstances which do or do not "speak for themselves" is compounded when, by plaintiff's specific proof, all antecedent circumstances are arrayed to show defendant's negligence and to negate other possible causes. Here, for example, the majority do not regard this case as involving an exploding tire, or a tire driven 4,000 miles; to them, for res ipsa purposes, this case involves a properly-inflated tire that failed after 4,000 miles of ordinary driving and revealed burned fiber characteristic of a manufacturing mishap. To them, therefore, the thing "speaks for itself," or at least the jury may think so if it accepts plaintiff's rather than defendant's circumstantial evidence and "theory of the case."[10] It is in the majority's unrestrained resort to plaintiff's circumstantial evidence of antecedent events that I part with them in determining the propriety of a res ipsa charge. Their reasoning blends plaintiff's circumstantial evidence case for res ipsa with his circumstantial evidence case isolating the cause as Dayton's manufacturing negligence.
Harper and James spoke worlds when they wrote "the happening of an accident and a description of some of the facts surrounding it may permit an inference of defendant's negligence without any direct testimony as to his conduct at the very time that such negligence occurred."[11] If the res ipsa net is cast wide enough in search of "the facts surrounding" the accident, any circumstantial evidence case sufficient for the jury on the issue of proven negligence may be transformed into one suitable for res ipsa.[12] But while any jury will likely *590 infer negligence when a driver runs down a pedestrian, it is hardly thought necessary or appropriate  at least, not yet  that the trial judge should incite such a finding on a jury issue by a res ipsa charge.[13]
I subscribe to the view expressed by the California Supreme Court in Tomei v. Henning, 67 Cal.2d 319, 62 Cal. Rptr. 9, 431 P.2d 633 (1967), in which, following a jury verdict for the defendant surgeon, the Court held a res ipsa charge should have been given. The surgeon sutured one of plaintiff's ureters during a hysterectomy. Chief Justice Traynor wrote for the court:
"[A res ipsa loquitur instruction] would have focused consideration on the inferences that could be drawn from the happening of the accident itself as distinct from the inferences that could be drawn from the evidence of the specific procedures available to a surgeon to avoid suturing a ureter or to discover such suturing in time to correct it before closing the wound... . Had the instruction been given, . .. the jury might reasonably have concluded that regardless of how the accident happened or how it could have been avoided, its happening alone supported an inference of negligence." 67 Cal.2d at 323-24, 62 Cal. Rptr. at 12, 431 P.2d at 636.
I recognize that urging a restricted view of the circumstances constituting "the accident itself"  i.e., that this was a tire blow-out after 4,000 miles, not a blowout after 4,000 miles of a properly maintained tire made of burned fiber  does not entirely relieve the embarrassing difficulty of stating criteria, useful in other factual contexts, for identifying the circumstances relevant to the res ipsa issue. While the restricted view still must have a boundary, which one judge and another may draw differently in a case for which there is no factual precedent,[14] one would expect the area of potential disagreement to contract with the circumference of "the accident itself." That would promote predictability in trial court rulings and appellate review on res ipsa  a laudable purpose in itself.
Moreover, a restricted examination of "the accident itself" would tend to disregard collateral circumstances which often are disputed by the evidence, or which often support conflicting inferences, e.g., the presence or absence of abnormal treadwear on a failing tire. After surviving such a test, a res ipsa charge is less likely to be misunderstood as inviting the jury uncritically to infer negligence from inferences which are themselves disputed. If the failure or malfunction of an instrument which passed beyond defendant's absolute control is found not to imply probable negligence, no concern need be given the frequently contested secondary criterion for res ipsa, that in the interval the instrument was not in fact subjected to harm. E.g., Goodyear *591 Tire & Rubber Co. v. Hughes Supply Inc., supra n. 1. Plaintiff may rely on his direct or circumstantial (and disputed) evidence negating harm to the instrument since it left defendant's control, but neither that evidence nor plaintiff's specific evidence of negligence should be considered in the threshold determination whether the accident was of a sort that ordinarily does not occur in the absence of someone's negligence.
Florida courts have special reasons to avoid jury charges on res ipsa loquitur when common experience or expert testimony[15] does not show the accident was of a sort that ordinarily cannot occur in the absence of negligence. Although the charge merely permits and does not require the jury to infer that defendant was negligent, it can hardly be doubted that the charge in its most innocuous form is a judicial suggestion that the jurors find negligence where otherwise they might not. The charge has no other purpose. The impact of Florida's standard instruction on res ipsa,[16]
"If you find that the circumstances of the occurrence were such that, in the ordinary course of events, it would not have happened in the absence of negligence, that the instrumentality causing an injury was in the exclusive control of the defendant at the time the negligent act or omission, if any, must have occurred and that the instrumentality, after leaving the defendant's control, was not improperly used or handled by others or subjected to harmful forces or conditions, you may infer that the defendant was negligent ...,"
is only modestly neutralized by the qualifying
"... unless, taking into consideration all of the evidence in the case, you conclude that the occurrence was not due to any negligence on the part of the defendant."
It does not seem entirely speculative to say that a Florida jury is more likely than a jury elsewhere to accept the judicial hint, pass over the troublesome questions, and go home. Florida's standard jury instructions seek to "express the applicable issues and guiding legal principles briefly and in simple, understandable language, without argument, without unnecessary repetition and without reliance on negative charges."[17] Florida juries no longer are charged that negligence is not to be "inferred from the mere happening of an accident alone"  the simplistic truism which provoked Baron Pollock in the first instance  nor that circumstantial evidence is different from direct evidence, nor that there are such things as unavoidable accidents, that one is presumed to exercise reasonable care for his own safety, that one may assume others will do so, that one has a duty to inspect and maintain his vehicle in safe condition.[18] Florida's commitment is that juries, assisted by counsel's argument, are capable of drawing appropriate inferences from the evidence and deductions from the law generally stated. Jury charges in other states are often longer and more detailed.[19] In Florida, *592 where res ipsa is the stark exception to brief jury instructions containing no hint of judicial commentary on circumstantial evidence and inferences, it may be assumed that a res ipsa charge carries more impact than if it were lost in a lengthy dissertation on all the ramifications of negligence and its proof. That alone is reason enough to take seriously the taming of res ipsa loquitur, to remove unwarranted judicial argument from the charge, and to expand liability, where that is thought desirable, by more appropriate substantive doctrines.
NOTES
[1] A divided Fourth District held in Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 336 So.2d 1221 (Fla. 4th DCA 1976), that when plaintiff's evidence tends to negate intervening external damage to a tire driven 9,500 miles, the manufacturer's affirmative evidence to the contrary may be disregarded and the res ipsa charge given. Frash v. Sarres, 60 So.2d 924 (Fla. 1952), apparently to the contrary, held a res ipsa charge foreclosed by defendant's evidence, conflicting with plaintiff's, tending to show intervening damage resulting from contributory negligence. See also Burgin v. Merritt, 311 So.2d 688, 691 (Fla. 4th DCA) cert. den., 324 So.2d 84 (Fla. 1975). Compare Groves v. Florida Coca-Cola Bottling Co., 40 So.2d 128, 130 (Fla. 1949), quoted in Steele v. Royal Crown Cola Bottling Co., 335 So.2d 586, 588 (Fla.3d DCA 1976). The Supreme Court is considering Goodyear on certiorari granted.
[2] Restatement (Second) of Torts § 328d, comment c (1964): "The fact that a tire blows out, or that a man falls downstairs is not, in the absence of anything more, enough to permit the conclusion that there was negligence in inspecting the tire, or in the construction of the stairs, because it is common human experience that such events all too frequently occur without such negligence" (emphasis supplied).
[3] Prosser, Handbook of the Law of Torts 215-16 (4th ed. 1971): "[T]here are many accidents which, as a matter of common knowledge, occur frequently enough without anyone's fault. A tumble downstairs, a fall in alighting from a standing streetcar, a tire of an ordinary automobile which blows out ... will not in themselves justify the conclusion that negligence is the most likely explanation; and to such events res ipsa loquitur does not apply" (emphasis supplied, footnotes omitted).
[4] E.g., Belden v. Lynch, 126 So.2d 578, 581 (Fla.2d DCA 1961).
[5] No witness saw the barrel until it fell on Byrne. Boadle offered no evidence. Charles Russell, Esq., argued for Boadle that "surmise ought not to be substituted for strict proof when it is sought to fix a defendant with serious liability," and that "these facts do not disclose any evidence for the jury of negligence." Baron Pollock replied: "there are certain cases of which it may be said res ipsa loquitur, and this seems one of them. In some cases the Courts have held that the mere fact of the accident having occurred is evidence of negligence, as, for instance, in the case of railway collisions." Russell argued to no avail that "that doctrine would seem to be confined to the case of a collision between two trains upon the same line, and both being the property and under the management of the same Company." 159 Eng.Rep. at 300.
[6] Baron Bramwell stated: "Looking at the matter in a reasonable way it comes to this  an injury is done to the plaintiff, who has no means of knowing whether it was the result of negligence; the defendant, who knows how it was caused, does not think fit to tell the jury." Lawyer Russell responded: "The plaintiff cannot, by a defective proof of his case, compel the defendant to give evidence in explanation." 159 Eng.Rep. at 301 (emphasis added).
[7] West Coast Hosp. Ass'n v. Webb, 52 So.2d 803, 804 (Fla. 1951) was in the classic pattern of Bryne v. Boadle. All the witnesses were "at a loss to understand" how Margaret Webb was burned during surgery.
[8] Groves v. Fla. Coca-Cola Bottling Co., supra n. 1; Henning v. Thompson, 45 So.2d 755 (Fla. 1950); Yarbrough v. Ball U-Drive System, Inc., supra; Tampa Transit Lines, Inc. v. Corbin, 62 So.2d 10 (Fla. 1952); Miami Coca-Cola Bottling Co. v. Reisinger, 68 So.2d 589 (Fla. 1954); Martin v. Powell, 101 So.2d 610 (Fla.2d DCA 1958), cert. den., 104 So.2d 596 (Fla. 1958); Kadushin v. Philmac Realty Corp., 128 So.2d 400 (Fla.3d DCA 1961); Greyhound Corp. v. Ford, 157 So.2d 427 (Fla.2d DCA 1963); Stanek v. Houston, 165 So.2d 825 (Fla.2d DCA 1964); LaMack v. Fountainbleau Hotel Corp., 186 So.2d 31 (Fla.3d DCA 1966); Holman v. Ford Mot. Co., supra; Mapp v. Cedars of Lebanon Hosp., Inc., 249 So.2d 521 (Fla.3d DCA 1971); Coca-Cola Bottling Co. v. Clark, 299 So.2d 78 (Fla.1st DCA 1974), cert. dism., 301 So.2d 100 (Fla. 1974); Burgin v. Merritt, supra n. 1; Steele v. Royal Crown Cola Bottling Co., supra n. 1; Lauck v. Publix Market, Inc., 335 So.2d 589 (Fla.3d DCA 1976); Sharon v. Luten, supra.
[9] 2 Harper and James, Law of Torts 1080-81 (1956).
[10] Auto Specialities Mfg. Co. v. Boutwell, 335 So.2d 291, 292 (Fla. 1st DCA 1976), cert. dism. on joint motion, 341 So.2d 1080 (Fla. 1976), held on facts not detailed by the opinion: "Although the facts in this case were conflicting, the Boutwells were entitled to have the jury instructed on their theory of the case which included the doctrine of res ipsa loquitur" (emphasis added). I dissented.
[11] 2 Harper and James, supra n. 9, at 1075 (emphasis added).
[12] The influence of plaintiff's specific proof of negligence on the res ipsa issue may be hidden in a narrow but questionable formulation of the circumstances which are said to justify a res ipsa charge. In Springer v. Reimers, 4 Cal. App.3d 325, 333-34, 84 Cal. Rptr. 486, 490 (1970), the court applying res ipsa found "reasonable support for the inference of negligence from the happening of the accident alone because a man standing on top of a truck trailer does not ordinarily fall therefrom unless someone has been negligent." That dubious assertion would likely not have been made if the evidence was that plaintiff had a history of fainting spells or was startled by a thunderclap. In fact, defendant's vehicle on which plaintiff was standing suddenly jerked.
[13] In McGinley v. Chancey, 70 So.2d 357 (Fla. 1957), the Supreme Court made the point which I wish to establish here: that res ipsa cannot take the place of specific proof of negligence when a guest passenger is injured by defendant's crashing an automobile into a light pole. The accident was held not to "speak for itself" because it was theoretically possible "defendant had blacked out, become paralyzed, or was trying to avoid hitting a child... ." Hence res ipsa has been held "unavailable in cases of automobile negligence." Abrams v. Nolan Brown Cad. Co., 228 So.2d 131, 132 (Fla.3d DCA 1969), cert. den., 237 So.2d 536 (Fla. 1970); Burgin v. Merritt, supra n. 1, 311 So.2d at 691. There are contrary decisions. 1 Frumer and Friedman, Products Liability 292 (1976).
[14] In Clark v. Gibbons, 66 Cal.2d 399, 423, 58 Cal. Rptr. 125, 141-42, 426 P.2d 525, 541 (1967), Chief Justice Traynor espoused essentially the same restricted view of the "accident itself" that he later expressed for the court in Tomei. But he did so dissenting from a decision approving a res ipsa charge in a case of premature termination of surgery when the anesthesia wore off. He stated: "[T]here is no basis for an inference that premature termination of anesthesia is probably the result of negligence. The hiatus in proof cannot logically be filled by invoking the rarity of the result and specific evidence of negligence... . Although there is evidence that Dr. Gibbons was negligent in failing to consider the relevant factors before making his decision to terminate the operation, such evidence of specific negligence sheds no light on the inferences that may be drawn from the happening of the accident itself."
[15] Expert testimony if otherwise admissible may establish for res ipsa purposes, when common experience cannot, that an accident of a particular sort ordinarily cannot happen without negligence. But such testimony, absent in the case before us, should not be confused with expert testimony analyzing antecedent events and collateral circumstances and tending thereby to isolate the cause as defendant's negligence. There was abundant expert testimony of the latter type in this case. See also Baker v. B.F. Goodrich Co., 115 Cal. App.2d 221, 252 P.2d 24 (1953), which Frumer and Friedman discuss without distinguishing between what I have called the threshold issue and the secondary issue of whether the probable negligence was probably the defendant's. 1 Products Liability 300-303 (1976).
[16] Charge 4.6, Florida Standard Jury Instructions (Civil), was one of the original charges approved and published in 1967.
[17] Florida Standard Jury Instructions (Civil) xviii.
[18] Id. at 3.9 comment, 4.1 comments, 4.7, 4.13b.
[19] E.g., California. See BAJI 2.00 on direct and circumstantial evidence and inferences; 3.13 on right to assume others' good conduct; 3.14 on right to assume others' normal faculties; 3.16 on evidence of custom in relation to ordinary care; 3.51 on forgetfulness of known danger as contributory negligence; 3.79 on third party's intervening negligence as superseding cause. California's standard charges on res ipsa loquitur are themselves more detailed than Florida's: BAJI 4.0, 4.01, 4.02, 4.03. California Jury Instructions-Civil (BAJI) (5th rev. ed. 1969).